# EXHIBIT A

 **CT Corporation**

**Service of Process Transmittal**
04/05/2022
CT Log Number 541350183

**TO:**    Madison Team
CTPROCOMPLY (RECIPIENT ACCOUNT ONLY)
8020 EXCELSIOR DR STE 200
MADISON, WI 53717-1998

**RE:**    **Process Served in California**

**FOR:**    BAKOTIC PATHOLOGY ASSOCIATES, L.L.C.  (Former Name)  (Domestic State: GA)
Bako Integrated Physician Solutions (True Name)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | AARON TAMRAZ, on behalf of himself and all others similarly situated vs. BAKOTIC PATHOLOGYASSOCIATES, L.L.C. |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 37202200008859CUMCNC |
| **ON WHOM PROCESS WAS SERVED:** | CTProComply Company, Sacramento, CA |
| **DATE AND HOUR OF SERVICE:** | By Regular Mail on 04/05/2022 postmarked: "Not Post Marked" |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT will retain the current log<br><br>Image SOP<br><br>Email Notification,  Madison Team  ctsop@ctprocomply.com |
| **REGISTERED AGENT ADDRESS:** | CTProComply Agent<br>555 Capitol Mall<br>Suite 1150<br>Sacramento, CA 95814<br><br>866-539-8692<br>CorporationTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Center For Disability Access
505 South Friendswood Dr. Suite 313
Friendswood, Texas 77546

NORTH HOUSTON TX 773

31 MAR 2022PM 6 L

stamps

$0.99 0
US POSTAGE
FIRST-CLASS
062S0009564689
FROM 92111

stamps

Bakotic Pathology Associates, L.L.C.
330 N Brand Blvd Ste 700
Glendale, CA 91203

91203-233675

1  **POTTER HANDY, LLP**
   Mark D. Potter (SBN 166317)
2  mark@potterhandy.com
3  James M. Treglio (SBN 228077)
   jimt@potterhandy.com
4  100 Pine St., Ste 1250,
5  San Francisco, CA 94111
   Phone: (858) 375-7385
6  Fax: (888) 422-5191

7
   Counsel for Plaintiff
8

9        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10              **COUNTY OF SAN DIEGO**

11

12 | AARON TAMRAZ, on behalf of himself   )   Case No.: 37-2022-00008859-CU-MC-NC
   and all others similarly situated,    )

13                                        )
                                          )
14              Plaintiff,                )

15 | v.                                   )   **NOTICE OF CHANGE OF ADDRESS**
                                          )
16 | BAKOTIC PATHOLOGY ASSOCIATES, )
   L.L.C. d/b/a BAKO PATHOLOGY           )
17 | ASSOCIATES, a Georgia Limited Liability)
   Company; BAKO PATHOLOGY              )
18                                        )
   HOLDINGS CORPORATION, a              )
19 | Delaware corporation; and DOES 1 through)
20 | 100, inclusive,                      )
                                          )
21              Defendants.               )
                                          )

22

23

24

25

26

27

28

                        -1-

1
## NOTICE OF CHANGE OF ADDRESS

2

3          TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

4

5          PLEASE TAKE NOTICE THAT Potter Handy, LLP has changed its address as

6     follows:

7

8          100 Pine St., Ste 1250, San Francisco, CA 94111.

9

10    Dated: March 23, 2022                    POTTER HANDY, LLP

11

12                                             By: _____/s/James M. Treglio____
                                                    James M. Treglio
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Change of Address

1

2

3

## **PROOF OF SERVICE**
## **Tamraz v. Bakotic Pathology Associates, LLC, et al.**
## **Case No.: 37-2022-00008859-CU-MC-NC**

4

5

I, the undersigned, am over the age of eighteen years and a resident of San Diego County, California; I am not a party to the above-entitled action; My business address is 100 Pine St., Ste 1250, San Francisco, CA 94111.

6

On March 30, 2022, I served the following document(s):

7

- **Notice of Change of Address**

8

Addressed to:

9

C T CORPORATION SYSTEM
Agent for Service of Process for Bakotic Pathology Associates, L.L.C.

10

330 N Brand Blvd Ste 700, Glendale, CA 91203

11

CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA
AS CSC - LAWYERS INCORPORATING SERVICE

12

Agent for Service of Process for BAKO PATHOLOGY HOLDINGS CORPORATION,

13

2710 Gateway Oaks Drive Ste 150N, Sacramento, CA 95833

14

15

x    BY MAIL: I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Friendswood, Texas.

16

☐    BY FACSIMILE: In addition to the service by mail as set forth above, I forwarded a copy of said documents via facsimile to the listed facsimile number.

17

☐    BY OVERNIGHT EXPRESS: I caused such envelope with postage thereon fully prepaid to be placed in the Designated Overnite Express drop box in Friendswood, Texas.

18

☐    BY PERSONAL SERVICE: I caused said documents to be personally served on all listed recipients Via ASAP Legal Services.

19

_____ BY ELECTRONIC MAIL TRANSMISSION: via email. I caused the listed documents to be electronically filed and or subsequently emailed to the above recipients.

20

21

22

Executed on March 30, 2022 from San Diego, California.

23

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

24

25

/s/ James M. Treglio

26

27

James M. Treglio

28

Notice of Change of Address



**null / ALL**
**Transmittal Number: 24731631**
**Date Processed: 04/07/2022**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Benjamin Edmands<br>Consonance Capital<br>1370 Avenue of the Americas<br>Ste 3301<br>New York, NY 10019-4617 |

| | |
|---|---|
| **Entity:** | Bako Pathology Holdings Corp.<br>Entity ID Number  3530374 |
| **Entity Served:** | Bako Pathology Holdings Corporation |
| **Title of Action:** | Aaron Tamraz vs. Bakotic Pathology Associates, L.L.C. d/b/a Bako Pathology Associates |
| **Document(s) Type:** | Notice |
| **Nature of Action:** | Others |
| **Court/Agency:** | San Diego County Superior Court, CA |
| **Case/Reference No:** | 37-2022-00008859-CU-MC-NC |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 04/04/2022 |
| **Answer or Appearance Due:** | Other/NA |
| **Originally Served On:** | CSC |
| **How Served:** | Regular Mail |
| Sender Information: | Potter Handy, Llp<br>858-375-7385 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

1  **POTTER HANDY, LLP**
   Mark D. Potter (SBN 166317)
2  mark@potterhandy.com
   James M. Treglio (SBN 228077)
3  jimt@potterhandy.com
   100 Pine St., Ste 1250,
4  San Francisco, CA 94111
5  Phone: (858) 375-7385
   Fax: (888) 422-5191
6
7
   Counsel for Plaintiff
8

9              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                      **COUNTY OF SAN DIEGO**

11

12 AARON TAMRAZ, on behalf of himself    )   Case No.: 37-2022-00008859-CU-MC-NC
   and all others similarly situated,         )
13                                            )
                          Plaintiff,          )
14                                            )
   v.                                         )   **NOTICE OF CHANGE OF ADDRESS**
15                                            )
   BAKOTIC PATHOLOGY ASSOCIATES,              )
16 L.L.C. d/b/a BAKO PATHOLOGY                )
   ASSOCIATES, a Georgia Limited Liability )
17 Company; BAKO PATHOLOGY                    )
18 HOLDINGS CORPORATION, a                    )
   Delaware corporation; and DOES 1 through )
19 100, inclusive,                            )
20                        Defendants.         )
21                                            )

22

23

24

25

26

27

28

Notice of Change of Address

1

## NOTICE OF CHANGE OF ADDRESS

2

3      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

4

5      PLEASE TAKE NOTICE THAT Potter Handy, LLP has changed its address as

6   follows:

7

8      100 Pine St., Ste 1250, San Francisco, CA 94111.

9

10  Dated: March 23, 2022                    POTTER HANDY, LLP

11

12                                           By: ____/s/James M. Treglio____
                                                  James M. Treglio
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Change of Address

**PROOF OF SERVICE**
**Tamraz v. Bakotic Pathology Associates, LLC, et al.**
**Case No.: 37-2022-00008859-CU-MC-NC**

I, the undersigned, am over the age of eighteen years and a resident of San Diego County, California; I am not a party to the above-entitled action; My business address is 100 Pine St., Ste 1250, San Francisco, CA 94111.

On March 30, 2022, I served the following document(s):

- **Notice of Change of Address**

Addressed to:

C T CORPORATION SYSTEM
Agent for Service of Process for Bakotic Pathology Associates, L.L.C.
330 N Brand Blvd Ste 700, Glendale, CA 91203

CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERVICE
Agent for Service of Process for BAKO PATHOLOGY HOLDINGS CORPORATION,
2710 Gateway Oaks Drive Ste 150N, Sacramento, CA 95833

x    <u>BY MAIL:</u> I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Friendswood, Texas.

☐    <u>BY FACSIMILE:</u> In addition to the service by mail as set forth above, I forwarded a copy of said documents via facsimile to the listed facsimile number.

☐    <u>BY OVERNIGHT EXPRESS:</u> I caused such envelope with postage thereon fully prepaid to be placed in the Designated Overnite Express drop box in Friendswood, Texas.

☐    <u>BY PERSONAL SERVICE:</u> I caused said documents to be personally served on all listed recipients Via ASAP Legal Services.

_____ <u>BY ELECTRONIC MAIL TRANSMISSION:</u> via email. I caused the listed documents to be electronically filed and or subsequently emailed to the above recipients.

Executed on March 30, 2022 from San Diego, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

/s/ James M. Treglio

_____
James M. Treglio

-3-

Notice of Change of Address

 **CT Corporation**

**Service of Process Transmittal**
04/22/2022
CT Log Number 541453178

**TO:** Madison Team
CTPROCOMPLY (RECIPIENT ACCOUNT ONLY)
8020 EXCELSIOR DR STE 200
MADISON, WI 53717-1998

**RE:** **Process Served in California**

**FOR:** BAKOTIC PATHOLOGY ASSOCIATES, L.L.C.  (Former Name)  (Domestic State: GA)
Bako Integrated Physician Solutions (True Name)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | AARON TAMRAZ, on behalf of himself and all others similarly situated vs. BAKOTIC PATHOLOGYASSOCIATES, L.L.C. |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 37202200008859CUMCNC |
| **ON WHOM PROCESS WAS SERVED:** | CTProComply Company, Sacramento, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/22/2022 at 02:06 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Madison Team  ctsop@ctprocomply.com |
| **REGISTERED AGENT ADDRESS:** | CTProComply Agent<br>555 Capitol Mall<br>Suite 1150<br>Sacramento, CA 95814 |
| | 866-539-8692<br>CorporationTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

 CT Corporation

**Service of Process Transmittal**
04/22/2022
CT Log Number 541453178

TO:     Madison Team
        CTPROCOMPLY (RECIPIENT ACCOUNT ONLY)
        8020 EXCELSIOR DR STE 200
        MADISON, WI 53717-1998

RE:     **Process Served in California**

FOR:    BAKOTIC PATHOLOGY ASSOCIATES, L.L.C.  (Former Name)  (Domestic State: GA)
        Bako Integrated Physician Solutions (True Name)

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED: | DATE AND HOUR OF SERVICE: | TO: | CT LOG NUMBER: |
| --- | --- | --- | --- |
| -- | By Regular Mail on 04/05/2022 at 12:33 postmarked: "Not Post Marked" | Madison Team CTPROCOMPLY (RECIPIENT ACCOUNT ONLY) | 541350183 |



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                          Fri, Apr 22, 2022
**Server Name:**                              Robert Diaz

| Entity Served | BAKOTIC PATHOLOGY ASSOCIATES, L.L.C. |
|---|---|
| Case Number | 37-2022-00008859-CU-MC-NC |
| Jurisdiction | CA |

| Inserts |
|---|



**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br><br>BAKOTIC PATHOLOGY ASSOCIATES, L.L.C. d/b/a BAKO PATHOLOGY ASSOCIATES,<br>a Georgia Limited Liability Company; BAKO PATHOLOGY HOLDINGS CORPORATION, a<br>Delaware corporation; and DOES 1 through 100, inclusive,<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br><br>AARON TAMRAZ, on behalf of himself and all others<br>similarly situated, | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**03/07/2022 at 03:20:31 PM**<br><br>Clerk of the Superior Court<br>By Daneille Hansen, Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*  North County Division<br><br>325 S. Melrose Drive, Vista, CA 92081 | CASE NUMBER:<br>*(Número del Caso):*<br>**37-2022-00008859-CU-MC-NC** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James M. Treglio; Potter Handy, LLP; 8033 Linda Vista Rd, Suite 200; San Diego, CA 92111; (858) 375-7385

| | | | |
|---|---|---|---|
| DATE: **03/09/2022**<br>*(Fecha)* | | Clerk, by ___*D. Hans___*___<br>*(Secretario)*   D. Hansen | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

   BAKOTIC PATHOLOGY ASSOCIATES, L.L.C.
3. ☑ on behalf of *(specify):* BAKO PATHOLOGY HOLDINGS CORPORATION

   under: ☑ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☑ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
8033 Linda Vista Rd, Suite 200
San Diego, CA 92111
Tel: (858) 375-7385
Fax: (888) 422-5191

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
**03/07/2022** at 03:28:31 PM
Clerk of the Superior Court
By Daneille Hansen, Deputy Clerk

Attorneys for Plaintiff AARON TAMRAZ, on behalf of himself and all others similarly situated,

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| AARON TAMRAZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BAKOTIC PATHOLOGY ASSOCIATES, L.L.C. d/b/a BAKO PATHOLOGY ASSOCIATES, a Georgia Limited Liability Company; BAKO PATHOLOGY HOLDINGS CORPORATION, a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | **CLASS ACTION** 37-2022-00008859-CU-MC-NC<br><br>**CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (FOR VIOLATIONS OF:**<br><br>**(1) THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CIVIL CODE §§ 56, *ET SEQ*.);**<br>**(2) CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq*.;**<br>**(3) CALIFORNIA CONSUMER RECORDS ACT, Cal. Civ. Code § 1798.82, *et seq*.**<br><br>**DEMAND FOR JURY TRIAL** |

1    Class Representative Plaintiff AARON TAMRAZ ("Class Representative Plaintiff"), by and

2    through his attorneys, individually and on behalf of others similarly situated, alleges upon

3    information and belief as follows:

4                                         **I.**

5                                **INTRODUCTION**

6        1.    Under the Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.*

7    (hereinafter referred to as the "Act"), Plaintiff AARON TAMRAZ ("Plaintiff"), and all other

8    persons similarly situated, had a right to keep their personal medical information provided to

9    Defendants BAKOTIC PATHOLOGY ASSOCIATES, L.L.C. d/b/a BAKO PATHOLOGY

10   ASSOCIATES and BAKO PATHOLOGY HOLDINGS CORPORATION ("Bako Diagnostics"

11   or "Defendant") confidential.  The short title of the Act states, "The Legislature hereby finds and

12   declares that persons receiving health care services have a right to expect that the confidentiality

13   of individual identifiable medical information derived by health service providers be reasonably.

14   preserved.   It is the intention of the Legislature in enacting this act, to provide for the,

15   confidentiality of individually identifiable medical information, while permitting certain,

16   reasonable and limited uses of that information." The Act specifically provides that "a provider of

17   health care, health care service plan, or contractor shall not disclose medical information regarding

18   a patient of the provider of health care or an enrollee or subscriber of a health care service plan

19   without first obtaining an authorization...." Civil Code. § 56.10(a).  The Act further provides that

20   "Every provider of health care, health care service plan, pharmaceutical company, or contractor

21   who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall

22   do so in a manner that preserves the confidentiality of the information contained therein. Any

23   provider of health care, health care service plan, pharmaceutical company, or contractor who

24   negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical

25   records shall be subject to the remedies ... provided under subdivisions (b) ... of Section 56.36."

26   Civil Code § 56.101(a).

27       2.    Civil Code § 56.36(b) provides Plaintiff, and all other persons similarly situated, with

28   a private right to bring an action against Defendant for violation of Civil Code § 56.101 by

                                         1

1  specifically providing that "[i]n addition to any other remedies available at law, any individual may

2  bring an action against any person or entity who has negligently released confidential information

3  or records concerning him or her in violation of this part, for either or both of the following: (1) ...

4  nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph, *it shall*

5  *not be necessary that the plaintiff suffered or was threatened with actual damages.* (2) The amount

6  of actual damages, if any, sustained by the patient." (Emphasis added.)

7       3.      This class action is brought on behalf of Plaintiff and a putative class defined as all

8  citizens of the State of California who received care at a facility, satellite, or urgent care location of

9  healthcare providers that were served by Defendant on or before December 28, 2021, and who

10  received notices from Defendant that their information was compromised ("Breach Victims," the

11  "Class," or the "Class Members").

12       4.      As alleged more fully below, Defendant created, maintained, preserved, and stored

13  Plaintiff's and the Class members' personal medical information onto the Defendant's computer

14  network prior to December 28, 2021.  Due to Defendant's mishandling of personal medical

15  information recorded onto the Defendant's computer network, there was an unauthorized release of

16  Plaintiff's and the Class members' confidential medical information that occurred on or about

17  December 21, 2021 to December 28, 2021, in violation of Civil Code § 56.101 of the Act.

18       5.      As alleged more fully below, Defendant negligently created, maintained, preserved,

19  and stored Plaintiff's and the Class members' confidential medical information in a non-encrypted

20  format onto a data server which became accessible to an unauthorized person, without Plaintiff's

21  and the Class members' prior written authorization. This act of providing unauthorized access to

22  Plaintiff's and the Class Members' confidential medical information onto the internet continuously

23  constitutes an unauthorized release of confidential medical information in violation of Civil Code §

24  56.101 of the Act.  Because Civil Code § 56.101 allows for the remedies and penalties provided

25  under Civil Code § 56.36(b), Class Representative Plaintiff, individually and on behalf of others

26  similarly situated, seeks nominal damages of one thousand dollars ($1,000) for each violation under

27  Civil Code § 56.36(b)(1).  Additionally, Class Representative Plaintiff, individually and on behalf

28

2

1 │ of others similarly situated, seeks injunctive relief for unlawful violations of Business and

2 │ Professions Code §§ 17200, *et seq.*

3 │       6.     Class Representative Plaintiff does not seek any relief greater than or different from

4 │ the relief sought for the Class of which Plaintiff is a member. The action, if successful, will enforce

5 │ an important right affecting the public interest and would confer a significant benefit, whether

6 │ pecuniary or non-pecuniary, for a large class of persons.  Private enforcement is necessary and

7 │ places a disproportionate financial burden on Class Representative Plaintiff in relation to Class

8 │ Representative Plaintiff's stake in the matter.

9 │ <center>**II.**</center>

10 │ <center>**JURISDICTION AND VENUE**</center>

11 │       7.     This Court has jurisdiction over this action under California Code of Civil Procedure

12 │ § 410.10.  The aggregated amount of damages incurred by Plaintiff and the Class exceeds the

13 │ $25,000 jurisdictional minimum of this Court.  The amount in controversy as to the Plaintiff

14 │ individually and each individual Class member does not exceed $75,000, including interest and any

15 │ pro rata award of attorneys' fees, costs, and damages.  Venue is proper in this Court under California

16 │ Bus. & Prof. Code § 17203, Code of Civil Procedure §§ 395(a) and 395.5 because Defendant does

17 │ business in the State of California and in the County of San Diego.  Defendant has obtained medical

18 │ information in the transaction of business in the County of San Diego, which has caused both

19 │ obligations and liability of Defendant to arise in the County of San Diego.

20 │ <center>**III.**</center>

21 │ <center>**PARTIES**</center>

22 │ **A.**    **PLAINTIFF**

23 │       8.     Class Representative Plaintiff AARON TAMRAZ is a resident of the State of

24 │ California.  At all times relevant, Plaintiff was a patient of Defendant through one of the healthcare

25 │ providers served by Defendant. Plaintiff received medical treatment from Defendant, and was a

26 │ patient, as defined by Civil Code § 56.05(k). Plaintiff's individual identifiable medical information

27 │ derived by Defendant in electronic form was in possession of Defendant, including but not limited

28 │ to Plaintiff's medical history, mental or physical condition, or treatment, including diagnosis and

<center>3</center>

1  treatment dates. Such medical information included or contained an element of personal identifying
2  information sufficient to allow identification of the individual, such as Plaintiff's name, date of birth,
3  addresses, medical record number, insurance provider, electronic mail address, telephone number,
4  or social security number, or other information that, alone or in combination with other publicly
5  available information, reveals Plaintiff's identity. Since receiving treatment at Defendant's
6  facilities, Plaintiff has received numerous solicitations by mail from third parties at an address he
7  only provided to Defendant.

8      9.      PLAINTIFF received from Defendant a notification that his personal medical
9  information and his personal identifying information were disclosed when an unauthorized person
10  gained access to Defendant's servers.

11  **B.    DEFENDANT**

12      10.      Defendant Bakotic Pathology Associates, L.L.C. d/b/a Bako Pathology Associates is
13  a Georgia limited liability company, with its principal place of business located at 6240 Shiloh Rd.,
14  Alpharetta, GA 30005. Defendant operates throughout the country including in San Diego,
15  California. At all times relevant, Defendant is a "provider of health care" as defined by Civil Code
16  § 56.05(m). Prior to December 28, 2021, Defendant created, maintained, preserved, and stored
17  Plaintiff's and the Class members' individually identifiable medical information onto Defendant's
18  computer network, including but not limited to Plaintiff's and the Class members' medical history,
19  mental or physical condition, or treatment, including diagnosis and treatment dates. Such medical
20  information included or contained an element of personal identifying information sufficient to allow
21  identification of the individual, such as Plaintiff's and the Class members' names, dates of birth,
22  addresses, medical record numbers, insurance providers, electronic mail addresses, telephone
23  numbers, or social security numbers, or other information that, alone or in combination with other
24  publicly available information, reveals Plaintiff's and the Class members' identities.

25      11.      Defendant Bako Pathology Holdings Corporation is a Delaware corporation, with its
26  principal place of business located at 6240 Shiloh Rd., Alpharetta, GA 30005. Defendant operates
27  throughout the country including in San Diego, California. At all times relevant, Defendant is a
28  "provider of health care" as defined by Civil Code § 56.05(m). Prior to December 28, 2021,

4

1  Defendant created, maintained, preserved, and stored Plaintiff's and the Class members'
2  individually identifiable medical information onto Defendant's computer network, including but not
3  limited to Plaintiff's and the Class members' medical history, mental or physical condition, or
4  treatment, including diagnosis and treatment dates. Such medical information included or contained
5  an element of personal identifying information sufficient to allow identification of the individual,
6  such as Plaintiff's and the Class members' names, dates of birth, addresses, medical record numbers,
7  insurance providers, electronic mail addresses, telephone numbers, or social security numbers, or
8  other information that, alone or in combination with other publicly available information, reveals
9  Plaintiff's and the Class members' identities.

10  **C.    DOE DEFENDANTS**

11  12.    The true names and capacities, whether individual, corporate, associate, or otherwise,
12  of Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to the Plaintiff,
13  who therefore sues the Defendants by such fictitious names under the Code of Civil Procedure §
14  474. Each of the Defendants designated herein as a DOE is legally responsible in some manner for
15  the unlawful acts referred to herein. Plaintiff will seek leave of court and/or amend this complaint
16  to reflect the true names and capacities of the Defendants designated hereinafter as DOES 1 through
17  100 when such identities become known. Any reference made to a named Defendant by specific
18  name or otherwise, individually or plural, is also a reference to the actions or inactions of DOES 1
19  through 100, inclusive.

20  **D.    AGENCY/AIDING AND ABETTING**

21  13.    At all times herein mentioned, Defendants, and each of them, were an agent or joint
22  venturer of each of the other Defendants, and in doing the acts alleged herein, were acting with the
23  course and scope of such agency. Each Defendant had actual and/or constructive knowledge of the
24  acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized
25  the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

26  14.    Defendants, and each of them, aided and abetted, encouraged and rendered
27  substantial assistance to the other Defendants in breaching their obligations to Plaintiff and the
28  Class, as alleged herein. In taking action, as particularized herein, to aid and abet and substantially

5

1   assist the commissions of these wrongful acts and other wrongdoings complained of, each of the

2   Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its

3   conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals,

4   and wrongdoing.

5                                          **IV.**

6                              **FACTUAL ALLEGATIONS**

7   **A.    The Data Breach**

8          15.    On or around February 25, 2022, Defendant issued a letter (the "Notice") to

9   individuals, including Plaintiff, providing, for the first time, a notice of a "potential unauthorized

10  activity in our computer network" that Defendant maintains for certain healthcare providers for

11  whom it provides laboratory services ("Facilities") and which contained some information relating

12  to certain individuals.

13         16.    In the Notice, Defendant notified consumers that when it became aware of the

14  unusual activity on December 28, 2021, it "immediately took steps to prevent any further

15  unauthorized activity and engaged a national forensic firm to investigate the incident and assist with

16  remediation efforts."

17         17.    Almost two months later or on February 25, 2022, Defendant sent the Notice stating

18  that "we have determined that an unauthorized third party was able to access certain systems that

19  contained personal information and remove some data between December 21 and 28, 2021" (the

20  "Data Breach").

21         18.    The Notice went on to say that as a result of the review, "we believe that your

22  information may have been involved." Defendant confirmed that some of Plaintiff's information

23  was present in the files that were illegally accessed from Defendant's server. Defendant failed to

24  state in its Notice when it identified that Plaintiff's information was included in the Data Breach.

25         19.    Yet, despite knowing many patients were in danger, Defendant did nothing to warn

26  Breach Victims until two months after it discovered the Data Breach and more than two months

27  after the actual date of the Data Breach, an unreasonable amount of time under any objective

28  standard. During this time, cyber criminals had free reign to surveil and defraud their unsuspecting

1  victims. Defendant apparently chose to complete its internal investigation and develop its excuses

2  and speaking points before giving class members the information they needed to protect themselves

3  against fraud and identity theft.

4       20.    During its investigation, Defendant determined that "personal information may have

5  included one or more of the following elements: (1) information to identify and contact you, such

6  as full name, date of birth, address, telephone number, and email address; (2) health insurance

7  information, such as name of insurer, plan and/or group number, and member number; (3) medical

8  information, such as medical record number, dates of service, provider and facility names, and

9  specimen or test information; and (4) billing and claims information."

10      21.    This was a staggering coup for cyber criminals and a stunningly bad showing for

11  Defendant.

12      22.    It is apparent from Defendant's Notice that the Personal and Medical information

13  contained within the server was not encrypted.

14      23.    In spite of the severity of the Data Breach, Defendant has done very little to protect

15  Breach Victims. In the Notice, Defendant states that it is notifying Breach Victims and it encourages

16  the Breach Victims to remain vigilant against incidents of identity theft and fraud, and to review

17  their account statements and explanation of benefits forms, and to monitor their free credit reports

18  for suspicious activity, and to detect errors. In effect, shirking its responsibility for the harm it has

19  caused and putting it all on the Breach Victims.

20      24.    Defendant failed to adequately safeguard Plaintiff and Class members' Personal and

21  Medical Information, allowing cyber criminals to access this wealth of priceless information and

22  use it for more than two months before Defendant warned the criminals' victims, the Breach Victims,

23  to be on the lookout.

24      25.    Defendant failed to spend sufficient resources on monitoring external incoming

25  emails and training its employees to identify email-born threats and defend against them.

26      26.    Defendant had obligations created by the Health Insurance Portability and

27  Accountability Act ("HIPAA"), the Confidentiality of Medical Information Act ("CMIA"),

28  reasonable industry standards, its own contracts with its patients and employees, common law, and

7

1    its representations to Plaintiff and Class members, to keep their Personal and Medical Information

2    confidential and to protect the information from unauthorized access.

3        27.    Plaintiff and Class members provided their Personal and Medical Information to

4    Defendant with the reasonable expectation and mutual understanding that Defendant would comply

5    with its obligations to keep such information confidential and secure from unauthorized access.

6        28.    Indeed, as discussed below, Defendant promised Plaintiff and Class members that it

7    would do just that.

8    **B.    Defendant Expressly Promised to Protect Personal and Medical Information**

9        29.    Defendant provides all patients, including Plaintiff and Class members, its Notice of

10    Privacy Practices Statement, which states that:

11
12        We greatly respect your privacy and value the relationship we have with you and
         your patients.  That is why we have this Privacy Policy: it describes the types of
13        personal information we may collect on our website (bakodx.com) (the "Site"), how
         we may use that information, with whom we may share it, and the measures we take
14        to protect the security of the information.  In addition, we describe the choices you
         can make about how we use the information you provide to us. We also provide you
15        direction on how you can reach us to update certain information you've given us, ask
16        us not to send you future communications, or answer any questions you may have
         about our privacy practices.[1]
17
18        30.    Likewise, Defendant's Notice of Privacy Practices contains a section on Uses and

19    Disclosures With Your Authorization, which states that:

20        BAKO cannot use your Protected Health Information for anything other than the
         reasons mentioned above, without your signed "Authorization." An Authorization is
21        a written document signed by you giving us permission to use or disclose your
22        Protected Health Information for the purposes you specifically set forth in the
         Authorization. For instance, we may not sell your Protected Health Information to
23        any party without your specific authorization. Additionally, we must obtain your
24        authorization for (1) any communications regarding products or services relating to
         your treatment, case management or care coordination, or alternative treatments,
25        therapies, provides or care settings when they are subsidized by a third party that
26        may benefit from the communication; and (2) prior to using your Protected Health

27

28    [1] Bako Diagnostics, "Notice of Privacy Practices Statement," Effective Date: June 9, 2021,
     https://bakodx.com/privacy/, last visited on March 4, 2022.

8

Class Action Complaint

Information to send you any marketing materials that are not permissible treatment or health care operations communications as stated above.

You may revoke the Authorization, at any time, by delivering a written statement to the BAKO Privacy Officer identified below. If you revoke your Authorization, BAKO will no longer use or disclose your Protected Health Information as permitted by your Authorization. However, your revocation of Authorization will not reverse the use or disclosure of your Protected Health Information made while your Authorization was in effect.

You have the right to request that BAKO limit its uses and disclosures of Protected Health Information in relation to treatment, payment, health care operations, and health services, or not use or disclose your Protected Health Information for these reasons at all. You also have the right to request BAKO restrict the use or disclosure of your Protected Health Information to family members or personal representatives. Any such request must be made in writing to BAKO's Privacy Officer listed below and must state the specific restriction requested and to whom that restriction would apply. BAKO is not required to agree to a restriction that you request, except that we must honor your request to restrict disclosures of Protected Health Information to a health plan that you have paid for in full out of pocket. BAKO may not be able to honor a restriction that you request if it conflicts with disclosure requirements mandated by law. However, if it does agree to the requested restriction, it may not violate that restriction except as necessary to allow the provision of emergency medical care to you.[2]

31.    Notwithstanding the foregoing assurances and promises, Defendant failed to protect the Personal and Medical Information of Plaintiff and other Class members from cyber criminals using relatively unsophisticated means to dupe its patients, as conceded in the Notice to the Breach Victims.

32.    If Defendant truly understood the importance of safeguarding patients' Personal and Medical Information, it would acknowledge its responsibility for the harm it has caused, and would compensate class members, provide long-term protection for Plaintiff and the Class, agree to Court-ordered and enforceable changes to its cybersecurity policies and procedures, and adopt regular and intensive training to ensure that a data breach like this never happens again.

---

[2] Id.

Class Action Complaint

33.     Defendant's data security obligations were particularly important given the known substantial increase in data breaches in the healthcare industry, including the recent massive data breach involving Rite Aid, Discovery Practice Management, Fairchild Medical Center, Scripps Health, HealthNet, LabCorp, Quest Diagnostics, and American Medical Collections Agency. And given the wide publicity given to these data breaches, there is no excuse for Defendant's failure to adequately protect Plaintiff and Class members' Personal and Medical Information.

34.     That information, is now in the hands of cyber criminals who will use it if given the chance. Much of this information is unchangeable and loss of control of this information is remarkably dangerous to consumers.

**C.     Defendant had an Obligation to Protect Personal and Medical Information under Federal and State Law and the Applicable Standard of Care**

35.     Defendant is an entity covered by HIPAA (45 C.F.R. § 160.102). As such, it is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and   Security Rule ("Security Standards for the Protection of Electronic Protected Health Information), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

36.     HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

37.     HIPAA's Security Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is held or transferred in electronic form.

38.     HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

39.     "Electronic protected health information" is "individually identifiable health information . . . that is (i) Transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

40.     HIPAA's Security Rule requires Defendant to do the following:

10

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

41.    HIPAA also required Defendant to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

42.    HIPAA also required Defendant to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

43.    The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, also required Defendant to provide notice of the breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*."[3]

44.    Defendant was also prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

---

[3] Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for professionals/breach-notification/index.html (emphasis added).

11

Class Action Complaint

45.    As described before, Defendant is also required (by the California Consumer Records Act ("CCRA"), CMIA and various other states' laws and regulations) to protect Plaintiff and Class members' Personal and Medical Information, and further, to handle any breach of the same in accordance with applicable breach notification statutes.

46.    In addition to their obligations under federal and state laws, Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Personal and Medical Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Breach Victims to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the Personal and Medical Information of the Breach Victims.

47.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to design, maintain, and test its computer systems and email system to ensure that the Personal and Medical Information in Defendant's possession was adequately secured and protected.

48.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to create and implement reasonable data security practices and procedures to protect the Personal and Medical Information in their possession, including adequately training its employees and others who accessed Personal Information within its computer systems on how to adequately protect Personal and Medical Information.

49.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to implement processes that would detect a breach on its data security systems in a timely manner.

50.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to act upon data security warnings and alerts in a timely fashion.

51.     Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to adequately train and supervise its employees to identify and avoid any phishing emails that make it past its email filtering service.

52.     Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Personal and Medical Information from theft because such an inadequacy would be a material fact in the decision to entrust Personal and Medical Information with Defendant.

53.     Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to disclose in a timely and accurate manner when data breaches occurred.

54.     Defendant owed a duty of care to Breach Victims because they were foreseeable and probable victims of any inadequate data security practices.

**D.    A Data Breach like Defendant's Results in Debilitating Losses to Consumers**

55.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[4] Cyber criminals can leverage Plaintiff and Class members' Personal and Medical Information that was stolen in the Data Breach to commit thousands-indeed, millions-of additional crimes, including opening new financial accounts in Breach Victims' names, taking out loans in Breach Victims' names, using Breach Victims' names to obtain medical services and government benefits, using Breach Victims' Personal Information to file fraudulent tax returns, using Breach Victims' health insurance information to rack up massive medical debts in their names, using Breach Victims' health information to target them in other phishing and hacking intrusions based on their individual health needs, using Breach Victims' information to obtain government benefits, filing fraudulent tax returns using Breach Victims' information, obtaining driver's licenses in Breach Victims' names but with another person's photograph, and giving false information to police during an arrest. Even worse, Breach Victims could be arrested for crimes identity thieves have committed.

---

[4] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info.  Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

13

56.     Personal and Medical Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black-market for years.

57.     This was a financially motivated data breach, as the only reason cyber criminals stole Plaintiff and the Class members' Personal and Medical Information from Defendant was to engage in the kinds of criminal activity described above, which will result, and has already begun to, in devastating financial and personal losses to Breach Victims.

58.     This is not just speculative. As the FTC has reported, if hackers get access to Personal and Medical Information, they *will* use it.[5]

59.     Hackers may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information **may continue for years**. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[6]

60.     For instance, with a stolen social security number, which is part of the Personal and Medical Information compromised in the Data Breach, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[7] Identity thieves can also use the information stolen from Breach Victims to qualify for expensive medical care and leave them and their contracted health insurers on the hook for massive medical bills.

61.     Medical identity theft is one of the most common, most expensive, and most difficult to prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is

---

[5] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[6] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu (emphasis added).

[7] *See, e.g.,* Christine Di Gangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with- your-social-security-number-108597/.

14

1    more "than identity thefts involving banking and finance, the government and the military, or
2    education."[8]

3    62.    "Medical identity theft is a growing and dangerous crime that leaves its victims with
4    little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum.
5    "Victims often experience financial repercussions and worse yet, they frequently discover erroneous
6    information has been added to their personal medical files due to the thief's activities."[9]

7    63.    As indicated by Jim Trainor, second in command at the FBI's cyber security division:
8    "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social
9    Security and insurance numbers, and even financial information all in one place. Credit cards can
10   be, say, five dollars or more where PHI can go from $20 say up to—we've seen $60 or $70
11   [(referring to prices on dark web marketplaces)]."[10] A complete identity theft kit that includes health
12   insurance credentials may be worth up to $1,000 on the black market.[11]

13   64.    If, moreover, the cyber criminals also manage to steal financial information,
14   credit and debit cards, health insurance information, driver's licenses and passports—as they did
15   here—there is no limit to the amount of fraud that Defendant has exposed the Breach Victims to.

16   65.    A study by Experian found that the average total cost of medical identity theft is
17   "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to
18   pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[12] Almost
19   half of medical identity theft victims lose their healthcare coverage as a result of the incident, while
20
21

---

22   [8] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014,
     https://khn.org/news/rise-of-indentity-theft/.
23   [9] *Id.*

24   [10] ID Experts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study
25   Shows*, https://www.idexpertscorp.com/knowedge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-
     private-healthcare-dat

26   [11] *Managing cyber risks in an interconnected world*, PRICEWATERHOUSECOOPERS: Key findings from The
     Global State of Information Security Survey 2015,https://www.pwc.com/gx/en/consulting-services/information-
     security-survey/assets/the-global- state-of-information-security-survey-2015.pdf

27   [12] *See* Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010),
28   https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.

Class Action Complaint

1  nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve

2  their identity theft at all.[13]

3       66.    As described above, identity theft victims must spend countless hours and large

4  amounts of money repairing the impact to their credit.[14]

5       67.    The danger of identity theft is compounded when a minor's Personal and Medical

6  Information is compromised because minors typically have no credit reports to monitor. Thus, it can

7  be difficult to monitor because a minor cannot simply place an alert on their credit report or "freeze"

8  their credit report when no credit report exists.

9       68.    Defendant did not even bother to offer identity monitoring to Plaintiff and the Class.

10 While some harm has begun already, the worst may be yet to come. There may be a time lag between

11 when harm occurs versus when it is discovered, and also between when Personal and Medical

12 Information is stolen and when it is used. Even if it did, identity monitoring only alerts someone to

13 the fact that they have already been the victim of identity theft (*i.e.*, fraudulent acquisition and use

14 of another person's Personal and Medical Information)—it does not prevent identity theft.[15] This is

15 especially true for many kinds of medical identity theft, for which most credit monitoring plans

16 provide little or no monitoring or protection.

17      69.    As a direct and proximate result of the Data Breach, Plaintiff and the Class have been

18 placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity

19 theft. Plaintiff and the Class must now take the time and effort to mitigate the actual and potential

20 impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with

21 credit reporting agencies, contacting their financial institutions, healthcare providers, closing or

22 modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports,

23 and health insurance account information for unauthorized activity for years to come.

24

25 [13] *Id.*; *see also Healthcare Data Breach: What to Know About them and What to Do After One*, EXPERIAN,
   https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-
26 after-one/.

27 [14] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013),
   http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

28 [15] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, Nov. 30, 2017,
   https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the- cost.html.

70.    Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

a. Trespass, damage to, and theft of their personal property including Personal and Medical Information;

b. Improper disclosure of their Personal and Medical Information;

c. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal and Medical Information being placed in the hands of criminals and having been already misused;

d. The imminent and certainly impending risk of having their confidential medical information used against them by spam callers to defraud them;

e. Damages flowing from Defendant's untimely and inadequate notification of the data breach;

f. Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cyber criminals have their Personal and Medical Information and that fraudsters have already used that information to initiate spam calls to members of the Class;

g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

h. Ascertainable losses in the form of deprivation of the value of customers' personal information for which there is a well-established and quantifiable national and international market;

i.    The loss of use of and access to their credit, accounts, and/or funds;

j.    Damage to their credit due to fraudulent use of their Personal and Medical Information; and

k. Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

71.    Moreover, Plaintiff and Class have an interest in ensuring that their information, which remains in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards.

17

72. Despite acknowledging the harm caused by the Data Breach on Plaintiff and Class members, Defendant does nothing to reimburse Plaintiff and Class members for the injuries they have already suffered.

## V.

## CLASS ACTION ALLEGATIONS

73. Class Representative Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated. The putative class that Class Representative Plaintiff seeks to represent is composed of:

> All citizens of the State of California who received care at a facility, satellite, or urgent care location of healthcare providers that were served by Defendant on or before December 28, 2021, and who received notices from Defendant that their information was compromised (hereinafter the "Class").

Excluded from the Class are the natural persons who are directors, and officers, of the Defendant. Class Representative Plaintiff expressly disclaims that he is seeking a class-wide recovery for personal injuries attributable to Defendant's conduct.

74. Plaintiff is informed and believes that the total number of Class Members exceeds 50,000 persons, and as such, the members of the Class are so numerous that joinder of all members is impracticable. While the exact number of the Class members is unknown to Class Representative Plaintiff at this time, such information can be ascertained through appropriate discovery, from records maintained by Defendant.

75. There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Class Representative Plaintiff's claims are typical of the members of the class, and Class Representative Plaintiff can fairly and adequately represent the interests of the Class.

76. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether Defendant failed to adequately safeguard Plaintiff and the Class' Personal and Medical Information;

(b) Whether Defendant failed to protect Plaintiff and the Class' Personal and Medical Information;

18

(c)     Whether Defendant's email and computer systems and data security practices used to protect Plaintiff and the Class' Personal and Medical Information violated the FTC Act, HIPAA, CMIA, CCRA and/or Defendant's other duties;

(d)     Whether Defendant violated the data security statutes and data breach notification statutes applicable to Plaintiff and the Class;

(e)     Whether Defendant failed to notify Plaintiff and members of the Class about the Data Breach expeditiously and without unreasonable delay after the Data Breach was discovered;

(f)     Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Breach Victims' Personal and Medical Information properly and as promised;

(g)     Whether Defendant acted negligently in failing to safeguard Plaintiff and the Class' Personal and Medical Information, including whether its conduct constitutes negligence *per se*;

(h)     Whether Defendant entered into implied contracts with Plaintiff and the members of the Class that included contract terms requiring Defendant to protect the confidentiality of Personal and Medical Information and have reasonable security measures;

(i)     Whether Defendant violated the consumer protection statutes, data breach notification statutes, and state medical privacy statutes applicable to Plaintiff and the Class;

(j)     Whether Defendant failed to notify Plaintiff and Breach Victims about the Data Breach as soon as practical and without delay after the Data Breach was discovered;

(k)     Whether Defendant's conduct described herein constitutes a breach of their implied contracts with Plaintiff and the Class;

(l)     Whether Plaintiff and the members of the Class are entitled to damages as a result of Defendant's wrongful conduct;

(m)     What equitable relief is appropriate to redress Defendant's wrongful conduct; and

(n)     What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class.

Class Representative Plaintiff's claims are typical of those of the other Class members because Class Representative Plaintiff, like every other Class member, was exposed to virtually identical conduct and is entitled to nominal damages of one thousand dollars ($1,000) per violation pursuant to Civil Code §§ 56.101 and 56.36(b)(1).

77.     Class Representative Plaintiff will fairly and adequately protect the interests of the Class. Moreover, Class Representative Plaintiff has no interest that is contrary to or in conflict with those of the Class he seeks to represent during the Class Period. In addition, Class Representative

19

1  Plaintiff has retained competent counsel experienced in class action litigation to further ensure such

2  protection and intend to prosecute this action vigorously.

3      78.    The prosecution of separate actions by individual members of the Class would create

4  a risk of inconsistent or varying adjudications with respect to individual members of the Class,

5  which would establish incompatible standards of conduct for the Defendant in the State of California

6  and would lead to repetitious trials of the numerous common questions of fact and law in the State

7  of California.  Class Representative Plaintiff knows of no difficulty that will be encountered in the

8  management of this litigation that would preclude its maintenance as a class action.  As a result, a

9  class action is superior to other available methods for the fair and efficient adjudication of this

10  controversy.

11      79.    Proper and sufficient notice of this action may be provided to the Class members

12  through direct mail.

13      80.    Moreover, the Class members' individual damages are insufficient to justify the cost

14  of litigation, so that in the absence of class treatment, Defendant's violations of law inflicting

15  substantial damages in the aggregate would go unremedied without certification of the Class.

16  Absent certification of this action as a class action, Class Representative Plaintiff and the members

17  of the Class will continue to be damaged by the unauthorized release of their individual identifiable

18  medical information.

19                                    **VI.**

20                          **CAUSES OF ACTION**

21                     **FIRST CAUSE OF ACTION**
   **(Violations of the Confidentiality of Medical Information Act, Civil Code § 56, *et seq.*)**
22                        **(Against All Defendants)**

23      81.    Plaintiff and the Class incorporate by reference all of the above paragraphs of this

24  Complaint as though fully stated herein.

25      82.    Defendant is a "provider of health care," within the meaning of Civil Code §

26  56.05(m), and maintained and continues to maintain "medical information," within the meaning of

27  Civil Code § 56.05(j), of "patients" of the Defendant, within the meaning of Civil Code § 56.05(k).

28

83.     Plaintiff and the Class are "patients" of Defendant within the meaning of Civil Code § 56.05(k).  Furthermore, Plaintiff and the Class, as patients of Defendant, had their individually identifiable "medical information," within the meaning of Civil Code § 56.05(j), stored onto Defendant's server, and received treatment at one the hospital, satellite, or urgent care locations served by Defendant on or before December 28, 2021.

84.     On or about December 28, 2021, Defendant determined that the illegally accessed files involved Plaintiff and Class members' individual identifiable "medical information," within the meaning of Civil Code § 56.05(j),[16] including Plaintiff and the Class members' (1) information to identify and contact you, such as full name, date of birth, address, telephone number, and email address; (2) health insurance information, such as name of insurer, plan and/or group number, and member number; (3) medical information, such as medical record number, dates of service, provider and facility names, and specimen or test information; and (4) billing and claims information.

85.     Defendant was made aware of an unusual activity involving certain of its electronic files.  Defendant immediately commenced an investigation to quickly assess the security of its systems. Through the investigation, Defendant determined that certain files were accessed and acquired between December 21 and 28, 2021 without authorization. During its investigation, Defendant determined that the information of certain individuals were present in the relevant files.

86.     As a result of Defendant's above-described conduct, Plaintiff and the Class have suffered damages from the unauthorized release of their individual identifiable "medical information" made unlawful by Civil Code §§ 56.10 and 56.101.

87.     Because Civil Code § 56.101 allows for the remedies and penalties provided under Civil Code § 56.36(b), Plaintiff individually and on behalf of the Class seek nominal damages of

---

[16] Pursuant to Civil Code § 56.05(j), "Medical information" means "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care...regarding a patient's medical history, mental or physical condition, or treatment. 'Individually Identifiable' means that the medical information includes or contains any elements of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity." As alleged herein, Defendant's unencrypted server contained Plaintiff and the Class members' names, dates of birth, and prescription information, and thus contained individually identifiable medical information as defined by Civil Code § 56.05(j)

one thousand dollars ($1,000) for each violation under Civil Code § 56.36(b)(1); and Plaintiff individually seeks actual damages suffered, if any, pursuant to Civil Code § 56.36(b)(2).

## SECOND CAUSE OF ACTION
**(Violations of the CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq.*)**

88.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

89.    Defendant is headquartered in California. Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200, *et seq.*, by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in the UCL, including, but not limited to, the following:

a.    by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard their Personal and Medical Information from unauthorized disclosure, release, data breach, and theft; representing and advertising that they did and would comply with the requirement of relevant federal and state laws pertaining to the privacy and security of the Class' Personal and Medical Information; and omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the Class' Personal and Medical Information;

b.    by soliciting and collecting Class members' Personal and Medical Information with knowledge that the information would not be adequately protected; and by storing Plaintiff and Class members' Personal and Medical Information in an unsecure electronic environment;

c.    by failing to disclose the Data Breach in a timely and accurate manner, in violation of Cal. Civ. Code §1798.82;

d.    by violating the privacy and security requirements of HIPAA, 42 U.S.C. §1302d, *et seq.*;

Class Action Complaint

1           e.  by violating the CMIA, Cal. Civ. Code § 56, *et seq.*; and

2           f.  by violating the CCRA, Cal. Civ. Code § 1798.82.

3       90.     These unfair acts and practices were immortal, unethical, oppressive, unscrupulous,

4   unconscionable, and/or substantially injurious to Plaintiff and Class members. Defendant's practice

5   was also contrary to legislatively declared and public policies that seek to protect consumer data and

6   ensure that entities who solicit or are entrusted with personal data utilize appropriate security

7   measures, as reflected by laws like the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1302d, *et*

8   *seq.*, CMIA, Cal. Civ. Code § 56, *et seq.*, and the CCRA, Cal. Civ. Code § 1798.81.5.

9       91.     As a direct and proximate result of Defendant's unfair and unlawful practices and

10   acts, Plaintiff and the Class were injured and lost money or property, including but not limited to

11   the overpayments Defendant received to take reasonable and adequate security measures (but did

12   not), the loss of their legally protected interest in the confidentiality and privacy of their Personal

13   and Medical Information, and additional losses described above.

14       92.     Defendant knew or should have known that its computer systems and data security

15   practices were inadequate to safeguard Plaintiff and Class members' Personal and Medical

16   Information and that the risk of a data breach or theft was highly likely. Defendant's actions in

17   engaging in the above-named unfair practices and deceptive acts were negligent, knowing and

18   willful, and/or wanton and reckless with respect to the rights of the Class.

19       93.     The conduct and practices described above emanated from California where

20   decisions related to Defendant's advertising and data security were made.

21       94.     Plaintiff seeks relief under the UCL, including restitution to the Class of money or

22   property that the Defendant may have acquired by means of Defendant's deceptive, unlawful,

23   and unfair business practices, declaratory relief, attorney fees, costs and expenses (pursuant to Cal.

24   Code Civ. P. § 1021.5), and injunctive or other equitable relief.

25   //

26   //

27   //

28

Class Action Complaint

**THIRD CAUSE OF ACTION**
**(Violations of the CALIFORNIA CONSUMER RECORDS ACT, Cal. Civ. Code § 1798.82,**
***et seq.*)**

95.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

96.    Section 1798.2 of the California Civil Code requires any "person or business that conducts business in California, and  that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonable delay . . . ."

97.    The CCRA further provides: "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b).

98.    Any person or business that is required to issue a security breach notification under the CCRA shall meet all of the following requirements:

   a. The security breach notification shall be written in plain language;

   b. The security breach notification shall include, at a minimum, the following information:

      i. The name and contact information of the reporting person or business subject to this section;

      ii. A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

      iii. If the information is possible to determine at the time the notice is provided, then any of the following:

         1. The date of the breach;

24

2. The estimated date of the breach; or

    3. The date range within which the breach occurred. The notification shall also include the date of the notice.

iv. Whether notification was delayed as a result of law enforcement investigation, if that information is possible to determine at the time the notice is provided;

v. A general description of the breach incident, if that information is possible to determine at the time the notice is provided; and

vi. The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a Social Security number or a driver's license or California identification card number.

99.    The Data Breach described herein constituted a "breach of the security system" of Defendant.

100.    As alleged above, Defendant unreasonably delayed informing Plaintiff and Class members about the Data Breach, affecting their Personal and Medical Information, after Defendant knew the Data Breach had occurred.

101.    Defendant failed to disclose to Plaintiff and the Class, without unreasonable delay and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, Personal and Medical Information when Defendant knew or reasonably believed such information had been compromised.

102.    Defendant's ongoing business interests gave Defendant incentive to conceal the Data Breach from the public to ensure continued revenue.

103.    Upon information and belief, no law enforcement agency instructed Defendant that timely notification to Plaintiff and the Class would impede its investigation.

104.    As a result of Defendant's violation of Cal. Civ. Code § 1798.82, Plaintiff and the Class were deprived of prompt notice of the Data Breach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection or requesting a credit freeze. These measures could have prevented some of the damages suffered by Plaintiff and Class members because their stolen information would have had less value to identity thieves.

1    105.    As a result of Defendant's violation of Cal. Civ. Code § 1798.82, Plaintiff and the

2  Class suffered incrementally increased damages separate and distinct from those simply caused by

3  the Data Breach itself.

4    106.    Plaintiff and the Class seek all remedies available under Cal. Civ. Code § 1798.84,

5  including, but not limited to the damages suffered by Plaintiff and the other Class members as

6  alleged above and equitable relief.

7    107.    Defendant's misconduct as alleged herein is fraud under Cal. Civ. Code § 3294(c)(3)

8  in that it was deceit or concealment of a material fact known to the Defendant conducted with the

9  intent on the part of Defendant of depriving Plaintiff and the Class of "legal rights or otherwise

10  causing injury." In addition, Defendant's misconduct as alleged herein is malice or oppression under

11  Cal. Civ. Code § 3294(c)(1) and (c) in that it was despicable conduct carried on by Defendant with

12  a willful and conscious disregard of the rights or safety of Plaintiff and the Class and despicable

13  conduct that has subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard

14  of their rights. As a result, Plaintiff and the Class are entitled to punitive damages against Defendant

15  under Cal. Civ. Code § 3294(a).

16

17                                  **PRAYER FOR RELIEF**

18    WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class

19  members the following relief against Defendant:

20    a.    An order certifying this action as a class action under Code of Civil Procedure §382,

21  defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that

22  Plaintiff is a proper representative of the Class requested herein;

23    b.    A judgment in favor of Plaintiff and the Class awarding them appropriate monetary

24  relief, including actual and statutory damages, including statutory damages under the CMIA,

25  punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and

26  proper.

27    c.    An order providing injunctive and other equitable relief as necessary to protect the

28  interests of the Class as requested herein, including, but not limited to:

26

Class Action Complaint

i.    Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

ii.   Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

iii.  Ordering that Defendant audit, test, and train their security personnel regarding any new or modified procedures;

iv.   Ordering that Defendant's segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

v.    Ordering that Defendant purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

vi.   Ordering that Defendant conduct regular database scanning and securing checks;

vii.  Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

viii. Ordering Defendant to meaningfully educate its current, former, and prospective employees and subcontractors about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps they must take to protect themselves.;

d.    An order requiring Defendant to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

e.    A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law, including the

Class Action Complaint

1   CCRA, Cal. Civ. Code § 1798.84(g), UCL, Cal. Bus. & Prof. Code § 17082, CMIA, Cal. Civ. Code

2   56.35; and

3       f.      An award of such other and further relief as this Court may deem just and proper.

4                               POTTER HANDY LLP

5                               /s/ James M. Treglio

6   Dated: March 7, 2022          By: _____

7                                       Mark D. Potter, Esq.
                                        James M. Treglio, Esq.
8                                 Attorneys for the Plaintiff and the Class

9

10

11

12                          **DEMAND FOR JURY TRIAL**

13      Plaintiff and the Class hereby demand a jury trial on all causes of action and claims with

14   respect to which they have a right to jury trial.

15                               POTTER HANDY LLP

16                               /s/ James M. Treglio

17  Dated: March 7, 2022          By: _____

18                                      Mark D. Potter, Esq.
                                        James M. Treglio, Esq.
                                  Attorneys for the Plaintiff and the Class
19

20

21

22

23

24

25

26

27

28

Class Action Complaint

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| James M. Treglio (SBN 228077)<br>Potter Handy, LLP<br>8033 Linda Vista Rd, Suite 200, San Diego, CA 92111<br><br>TELEPHONE NO.: (858) 375-7385    FAX NO. *(Optional):* 888-422-5191<br>ATTORNEY FOR *(Name):* Plaintiff, Aaron Tamraz | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**03/07/2022 at 03:28:31 PM**<br><br>Clerk of the Superior Court<br>By Daneille Hansen,Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN DIEGO**
STREET ADDRESS: 325 S. Melrose Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Vista, CA 92081
BRANCH NAME: North County Division

CASE NAME:
Tamraz v. Bakotic Pathology Associates, L.L.C. d/b/a Bako Pathology Associates, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 37-2022-00008859-CU-MC-NC |
| | | | | JUDGE:<br>DEPT.: **Judge Blaine K. Bowman** |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46) | [ ] Breach of contract/warranty (06)<br>[ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort** | [ ] Other collections (09)<br>[ ] Insurance coverage (18) | [ ] Mass tort (40)<br>[ ] Securities litigation (28) |
| [ ] Asbestos (04)<br>[ ] Product liability (24)<br>[ ] Medical malpractice (45)<br>[ ] Other PI/PD/WD (23) | [ ] Other contract (37)<br>**Real Property**<br>[ ] Eminent domain/Inverse<br>condemnation (14)<br>[ ] Wrongful eviction (33) | [ ] Environmental/Toxic tort (30)<br>[ ] Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41)<br>**Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort**<br>[ ] Business tort/unfair business practice (07)<br>[ ] Civil rights (08)<br>[ ] Defamation (13) | [ ] Other real property (26)<br>**Unlawful Detainer**<br>[ ] Commercial (31)<br>[ ] Residential (32) | [ ] Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint**<br>[ ] RICO (27)<br>[x] Other complaint *(not specified above)* (42) |
| [ ] Fraud (16)<br>[ ] Intellectual property (19)<br>[ ] Professional negligence (25)<br>[ ] Other non-PI/PD/WD tort (35) | [ ] Drugs (38)<br>**Judicial Review**<br>[ ] Asset forfeiture (05)<br>[ ] Petition re: arbitration award (11) | **Miscellaneous Civil Petition**<br>[ ] Partnership and corporate governance (21)<br>[ ] Other petition *(not specified above)* (43) |
| **Employment**<br>[ ] Wrongful termination (36)<br>[ ] Other employment (15) | [ ] Writ of mandate (02)<br>[ ] Other judicial review (39) | |

2. This case [x] is    [ ] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
b. [x] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more
issues that will be time-consuming to resolve         courts in other counties, states, or countries, or in a federal
c. [ ] Substantial amount of documentary evidence         court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* 3- Violations of the CMIA, Civil Code § 56, et seq, UCL, CCRA
5. This case [x] is    [ ] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: March 7, 2022

James M. Treglio                                              ▶ /s/ James M. Treglio
_____                     _____
(TYPE OR PRINT NAME)                                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | |
|---|---|
| STREET ADDRESS: | 325 S Melrose DRIVE |
| MAILING ADDRESS: | 325 S Melrose DRIVE |
| CITY AND ZIP CODE: | Vista, CA 92081-6695 |
| DIVISION: | North County |
| TELEPHONE NUMBER: | (760) 201-8031 |

PLAINTIFF(S) / PETITIONER(S):    AARON TAMRAZ

DEFENDANT(S) / RESPONDENT(S):   BAKOTIC PATHOLOGY ASSOCIATES LLC et.al.

TAMRAZ VS BAKOTIC PATHOLOGY ASSOCIATES LLC [IMAGED]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER:<br>37-2022-00008859-CU-MC-NC |
|---|---|

### CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Blaine K. Bowman                                    Department: N-31

### COMPLAINT/PETITION FILED: 03/07/2022

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 08/26/2022 | 09:00 am | N-31 | Blaine K. Bowman |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30 day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases. Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing. E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court. All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program." This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain. The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150. Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed. Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

Center For Disability Access
505 South Friendswood Dr. Suite 313
Friendswood, Texas 77546

NORTH HOUSTON TX 773

31 MAR 2022 PM 2 L



stamps

$0.99 0
US POSTAGE
FIRST-CLASS
062S0009564689
FROM 92111

stamps

BAKO PATHOLOGY HOLDINGS CORPORATION,
2710 Gateway Oaks Drive Ste 150N
Sacramento, CA 95833

95833-350224

**LMS Packing Slip**

# Package ID: 3668919

| | |
|---|---|
| **Tracking Number:** | 272841196094 |
| **Package Recipient:** | Benjamin Edmands |
| **Recipient Company:** | Consonance Capital |
| **Recipient Address:** | 1370 Avenue of the Americas Ste 3301 New York NY 10019-4617 USA |
| **Phone Number:** | 2126608069 |

**Package Contents:**

| Transmittal Number | Case Number | Title of Action |
|---|---|---|
| 24878623 | 37-2022-00008859-CU-MC-NC | Aaron Tamraz vs. Bakotic Pathology Associates, L.L.C. d/b/a Bako Pathology Associates |



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 24878623**
**Date Processed: 05/06/2022**

| Primary Contact: | Benjamin Edmands<br>Consonance Capital<br>1370 Avenue of the Americas<br>Ste 3301<br>New York, NY 10019-4617 |
|---|---|

| | |
|---|---|
| **Entity:** | Bako Pathology Holdings Corp.<br>Entity ID Number 3530374 |
| **Entity Served:** | Bako Pathology Holdings Corporation |
| **Title of Action:** | Aaron Tamraz vs. Bakotic Pathology Associates, L.L.C. d/b/a Bako Pathology Associates |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | San Diego County Superior Court, CA |
| **Case/Reference No:** | 37-2022-00008859-CU-MC-NC |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 04/19/2022 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Potter Handy LLP<br>858-375-7385 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
251 Little Falls Drive, Wilmington, Delaware 19808-1674  (888) 690-2882  |  sop@cscglobal.com

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:** <br> *(AVISO AL DEMANDADO):* <br><br> BAKOTIC PATHOLOGY ASSOCIATES, L.L.C. d/b/a BAKO PATHOLOGY ASSOCIATES, a Georgia Limited Liability Company; BAKO PATHOLOGY HOLDINGS CORPORATION, a Delaware corporation; and DOES 1 through 100, inclusive, <br><br> **YOU ARE BEING SUED BY PLAINTIFF:** <br> *(LO ESTÁ DEMANDANDO EL DEMANDANTE):* <br><br> AARON TAMRAZ, on behalf of himself and all others similarly situated, | FOR COURT USE ONLY <br> *(SOLO PARA USO DE LA CORTE)* <br><br> **ELECTRONICALLY FILED** <br> Superior Court of California, <br> County of San Diego <br> **03/07/2022** at 03:26:31 PM <br> Clerk of the Superior Court <br> By Danielle Hansen, Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* **North County Division** <br><br> 325 S. Melrose Drive, Vista, CA 92081 | **CASE NUMBER:** <br> *(Número del Caso):* <br><br> 37-2022-00008859-CU-MC-NC |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

James M. Treglio; Potter Handy, LLP; 8033 Linda Vista Rd, Suite 200; San Diego, CA 92111; (858) 375-7385

| DATE: 03/09/2022 <br> *(Fecha)* | Clerk, by _D. Hansen_ | , Deputy <br> *(Adjunto)* |
|---|---|---|
| | *(Secretario)* | |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* BAKOTIC PATHOLOGY ASSOCIATES, L.L.C. BAKO PATHOLOGY HOLDINGS CORPORATION

under: ☑ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
       ☑ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

1  **POTTER HANDY LLP**
2  Mark D. Potter (SBN 166317)
   mark@potterhandy.com
3  James M. Treglio (SBN 228077)
   jimt@potterhandy.com
4  8033 Linda Vista Rd, Suite 200
   San Diego, CA 92111
5  Tel: (858) 375-7385
6  Fax: (888) 422-5191

7  Attorneys for Plaintiff AARON TAMRAZ, on behalf of himself and all others similarly situated,

8
9           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

            **FOR THE COUNTY OF SAN DIEGO**
10

11 | AARON TAMRAZ, on behalf of himself and all others similarly situated, | ) **CLASS ACTION** 37-2022-00008869-CU-MC-NC |

12

13 AARON TAMRAZ, on behalf of himself and all others similarly situated,

          Plaintiff,

14        vs.

15 BAKOTIC PATHOLOGY ASSOCIATES,
   L.L.C. d/b/a BAKO PATHOLOGY
16 ASSOCIATES, a Georgia Limited Liability
   Company; BAKO PATHOLOGY HOLDINGS
17 CORPORATION, a Delaware corporation; and
   DOES 1 through 100, inclusive,
18
          Defendants.
19

) **CLASS ACTION** 37-2022-00008869-CU-MC-NC
)
) **CLASS COMPLAINT FOR DAMAGES**
) **AND INJUNCTIVE RELIEF (FOR**
) **VIOLATIONS OF:**
)
)   (1) **THE CONFIDENTIALITY OF**
)       **MEDICAL INFORMATION ACT,**
)       **CIVIL CODE §§ 56, *ET SEQ*.);**
)   (2) **CALIFORNIA UNFAIR**
)       **COMPETITION LAW, Cal. Bus. &**
)       **Prof. Code §17200, *et seq.;***
)   (3) **CALIFORNIA CONSUMER**
)       **RECORDS ACT, Cal. Civ. Code §**
)       **1798.82, *et seq.***
)
) **DEMAND FOR JURY TRIAL**

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
**03/07/2022** at 03:26:31 PM
Clerk of the Superior Court
By Daneille Hansen, Deputy Clerk

20
21
22
23
24
25
26
27
28

Class Action Complaint

Class Representative Plaintiff AARON TAMRAZ ("Class Representative Plaintiff"), by and through his attorneys, individually and on behalf of others similarly situated, alleges upon information and belief as follows:

## I.

## __INTRODUCTION__

1.      Under the Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.* (hereinafter referred to as the "Act"), Plaintiff AARON TAMRAZ ("Plaintiff"), and all other persons similarly situated, had a right to keep their personal medical information provided to Defendants BAKOTIC PATHOLOGY ASSOCIATES, L.L.C. d/b/a BAKO PATHOLOGY ASSOCIATES and BAKO PATHOLOGY HOLDINGS CORPORATION ("Bako Diagnostics" or "Defendant") confidential.  The short title of the Act states, "The Legislature hereby finds and declares that persons receiving health care services have a right to expect that the confidentiality of individual identifiable medical information derived by health service providers be reasonably preserved.   It is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable medical information, while permitting certain reasonable and limited uses of that information." The Act specifically provides that "a provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization...." Civil Code. § 56.10(a).  The Act further provides that "Every provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall be subject to the remedies ... provided under subdivisions (b) ... of Section 56.36." Civil Code § 56.101(a).

2.      Civil Code § 56.36(b) provides Plaintiff, and all other persons similarly situated, with a private right to bring an action against Defendant for violation of Civil Code § 56.101 by

specifically providing that "[i]n addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: (1) ... nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph, *it shall not be necessary that the plaintiff suffered or was threatened with actual damages.* (2) The amount of actual damages, if any, sustained by the patient." (Emphasis added.)

3.     This class action is brought on behalf of Plaintiff and a putative class defined as all citizens of the State of California who received care at a facility, satellite, or urgent care location of healthcare providers that were served by Defendant on or before December 28, 2021, and who received notices from Defendant that their information was compromised ("Breach Victims," the "Class," or the "Class Members").

4.     As alleged more fully below, Defendant created, maintained, preserved, and stored Plaintiff's and the Class members' personal medical information onto the Defendant's computer network prior to December 28, 2021. Due to Defendant's mishandling of personal medical information recorded onto the Defendant's computer network, there was an unauthorized release of Plaintiff's and the Class members' confidential medical information that occurred on or about December 21, 2021 to December 28, 2021, in violation of Civil Code § 56.101 of the Act.

5.     As alleged more fully below, Defendant negligently created, maintained, preserved, and stored Plaintiff's and the Class members' confidential medical information in a non-encrypted format onto a data server which became accessible to an unauthorized person, without Plaintiff's and the Class members' prior written authorization. This act of providing unauthorized access to Plaintiff's and the Class Members' confidential medical information onto the internet continuously constitutes an unauthorized release of confidential medical information in violation of Civil Code § 56.101 of the Act. Because Civil Code § 56.101 allows for the remedies and penalties provided under Civil Code § 56.36(b), Class Representative Plaintiff, individually and on behalf of others similarly situated, seeks nominal damages of one thousand dollars ($1,000) for each violation under Civil Code § 56.36(b)(1). Additionally, Class Representative Plaintiff, individually and on behalf

1  of others similarly situated, seeks injunctive relief for unlawful violations of Business and

2  Professions Code §§ 17200, *et seq.*

3       6.     Class Representative Plaintiff does not seek any relief greater than or different from

4  the relief sought for the Class of which Plaintiff is a member. The action, if successful, will enforce

5  an important right affecting the public interest and would confer a significant benefit, whether

6  pecuniary or non-pecuniary, for a large class of persons.  Private enforcement is necessary and

7  places a disproportionate financial burden on Class Representative Plaintiff in relation to Class

8  Representative Plaintiff's stake in the matter.

9                                                    **II.**

10                            **JURISDICTION AND VENUE**

11       7.     This Court has jurisdiction over this action under California Code of Civil Procedure

12  § 410.10.  The aggregated amount of damages incurred by Plaintiff and the Class exceeds the

13  $25,000 jurisdictional minimum of this Court.  The amount in controversy as to the Plaintiff

14  individually and each individual Class member does not exceed $75,000, including interest and any

15  pro rata award of attorneys' fees, costs, and damages.  Venue is proper in this Court under California

16  Bus. & Prof. Code § 17203, Code of Civil Procedure §§ 395(a) and 395.5 because Defendant does

17  business in the State of California and in the County of San Diego.  Defendant has obtained medical

18  information in the transaction of business in the County of San Diego, which has caused both

19  obligations and liability of Defendant to arise in the County of San Diego.

20                                                    **III.**

21                                            **PARTIES**

22  **A.    PLAINTIFF**

23       8.     Class Representative Plaintiff AARON TAMRAZ is a resident of the State of

24  California.  At all times relevant, Plaintiff was a patient of Defendant through one of the healthcare

25  providers served by Defendant. Plaintiff received medical treatment from Defendant, and was a

26  patient, as defined by Civil Code § 56.05(k). Plaintiff's individual identifiable medical information

27  derived by Defendant in electronic form was in possession of Defendant, including but not limited

28  to Plaintiff's medical history, mental or physical condition, or treatment, including diagnosis and

                                                    3

1  treatment dates. Such medical information included or contained an element of personal identifying

2  information sufficient to allow identification of the individual, such as Plaintiff's name, date of birth,

3  addresses, medical record number, insurance provider, electronic mail address, telephone number,

4  or social security number, or other information that, alone or in combination with other publicly

5  available information, reveals Plaintiff's identity. Since receiving treatment at Defendant's

6  facilities, Plaintiff has received numerous solicitations by mail from third parties at an address he

7  only provided to Defendant.

8      9.    PLAINTIFF received from Defendant a notification that his personal medical

9  information and his personal identifying information were disclosed when an unauthorized person

10  gained access to Defendant's servers.

11  **B.    DEFENDANT**

12      10.    Defendant Bakotic Pathology Associates, L.L.C. d/b/a Bako Pathology Associates is

13  a Georgia limited liability company, with its principal place of business located at 6240 Shiloh Rd.,

14  Alpharetta, GA 30005. Defendant operates throughout the country including in San Diego,

15  California. At all times relevant, Defendant is a "provider of health care" as defined by Civil Code

16  § 56.05(m). Prior to December 28, 2021, Defendant created, maintained, preserved, and stored

17  Plaintiff's and the Class members' individually identifiable medical information onto Defendant's

18  computer network, including but not limited to Plaintiff's and the Class members' medical history,

19  mental or physical condition, or treatment, including diagnosis and treatment dates. Such medical

20  information included or contained an element of personal identifying information sufficient to allow

21  identification of the individual, such as Plaintiff's and the Class members' names, dates of birth,

22  addresses, medical record numbers, insurance providers, electronic mail addresses, telephone

23  numbers, or social security numbers, or other information that, alone or in combination with other

24  publicly available information, reveals Plaintiff's and the Class members' identities.

25      11.    Defendant Bako Pathology Holdings Corporation is a Delaware corporation, with its

26  principal place of business located at 6240 Shiloh Rd., Alpharetta, GA 30005. Defendant operates

27  throughout the country including in San Diego, California. At all times relevant, Defendant is a

28  "provider of health care" as defined by Civil Code § 56.05(m). Prior to December 28, 2021,

4

1    Defendant created, maintained, preserved, and stored Plaintiff's and the Class members'

2    individually identifiable medical information onto Defendant's computer network, including but not

3    limited to Plaintiff's and the Class members' medical history, mental or physical condition, or

4    treatment, including diagnosis and treatment dates. Such medical information included or contained

5    an element of personal identifying information sufficient to allow identification of the individual,

6    such as Plaintiff's and the Class members' names, dates of birth, addresses, medical record numbers,

7    insurance providers, electronic mail addresses, telephone numbers, or social security numbers, or

8    other information that, alone or in combination with other publicly available information, reveals

9    Plaintiff's and the Class members' identities.

10   **C.    DOE DEFENDANTS**

11   　　　12.    The true names and capacities, whether individual, corporate, associate, or otherwise,

12   of Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to the Plaintiff,

13   who therefore sues the Defendants by such fictitious names under the Code of Civil Procedure §

14   474. Each of the Defendants designated herein as a DOE is legally responsible in some manner for

15   the unlawful acts referred to herein. Plaintiff will seek leave of court and/or amend this complaint

16   to reflect the true names and capacities of the Defendants designated hereinafter as DOES 1 through

17   100 when such identities become known. Any reference made to a named Defendant by specific

18   name or otherwise, individually or plural, is also a reference to the actions or inactions of DOES 1

19   through 100, inclusive.

20   **D.    AGENCY/AIDING AND ABETTING**

21   　　　13.    At all times herein mentioned, Defendants, and each of them, were an agent or joint

22   venturer of each of the other Defendants, and in doing the acts alleged herein, were acting with the

23   course and scope of such agency. Each Defendant had actual and/or constructive knowledge of the

24   acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized

25   the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

26   　　　14.    Defendants, and each of them, aided and abetted, encouraged and rendered

27   substantial assistance to the other Defendants in breaching their obligations to Plaintiff and the

28   Class, as alleged herein. In taking action, as particularized herein, to aid and abet and substantially

1  assist the commissions of these wrongful acts and other wrongdoings complained of, each of the

2  Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its

3  conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals,

4  and wrongdoing.

5                                          **IV.**

6                              **FACTUAL ALLEGATIONS**

7  **A.    The Data Breach**

8         15.    On or around February 25, 2022, Defendant issued a letter (the "Notice") to

9  individuals, including Plaintiff, providing, for the first time, a notice of a "potential unauthorized

10 activity in our computer network" that Defendant maintains for certain healthcare providers for

11 whom it provides laboratory services ("Facilities") and which contained some information relating

12 to certain individuals.

13        16.    In the Notice, Defendant notified consumers that when it became aware of the

14 unusual activity on December 28, 2021, it "immediately took steps to prevent any further

15 unauthorized activity and engaged a national forensic firm to investigate the incident and assist with

16 remediation efforts."

17        17.    Almost two months later or on February 25, 2022, Defendant sent the Notice stating

18 that "we have determined that an unauthorized third party was able to access certain systems that

19 contained personal information and remove some data between December 21 and 28, 2021" (the

20 "Data Breach").

21        18.    The Notice went on to say that as a result of the review, "we believe that your

22 information may have been involved." Defendant confirmed that some of Plaintiff's information

23 was present in the files that were illegally accessed from Defendant's server. Defendant failed to

24 state in its Notice when it identified that Plaintiff's information was included in the Data Breach.

25        19.    Yet, despite knowing many patients were in danger, Defendant did nothing to warn

26 Breach Victims until two months after it discovered the Data Breach and more than two months

27 after the actual date of the Data Breach, an unreasonable amount of time under any objective

28 standard. During this time, cyber criminals had free reign to surveil and defraud their unsuspecting

victims. Defendant apparently chose to complete its internal investigation and develop its excuses and speaking points before giving class members the information they needed to protect themselves against fraud and identity theft.

20.    During its investigation, Defendant determined that "personal information may have included one or more of the following elements: (1) information to identify and contact you, such as full name, date of birth, address, telephone number, and email address; (2) health insurance information, such as name of insurer, plan and/or group number, and member number; (3) medical information, such as medical record number, dates of service, provider and facility names, and specimen or test information; and (4) billing and claims information."

21.    This was a staggering coup for cyber criminals and a stunningly bad showing for Defendant.

22.    It is apparent from Defendant's Notice that the Personal and Medical information contained within the server was not encrypted.

23.    In spite of the severity of the Data Breach, Defendant has done very little to protect Breach Victims. In the Notice, Defendant states that it is notifying Breach Victims and it encourages the Breach Victims to remain vigilant against incidents of identity theft and fraud, and to review their account statements and explanation of benefits forms, and to monitor their free credit reports for suspicious activity, and to detect errors. In effect, shirking its responsibility for the harm it has caused and putting it all on the Breach Victims.

24.    Defendant failed to adequately safeguard Plaintiff and Class members' Personal and Medical Information, allowing cyber criminals to access this wealth of priceless information and use it for more than two months before Defendant warned the criminals' victims, the Breach Victims, to be on the lookout.

25.    Defendant failed to spend sufficient resources on monitoring external incoming emails and training its employees to identify email-born threats and defend against them.

26.    Defendant had obligations created by the Health Insurance Portability and Accountability Act ("HIPAA"), the Confidentiality of Medical Information Act ("CMIA"), reasonable industry standards, its own contracts with its patients and employees, common law, and

7

its representations to Plaintiff and Class members, to keep their Personal and Medical Information confidential and to protect the information from unauthorized access.

27.    Plaintiff and Class members provided their Personal and Medical Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

28.    Indeed, as discussed below, Defendant promised Plaintiff and Class members that it would do just that.

**B.    Defendant Expressly Promised to Protect Personal and Medical Information**

29.    Defendant provides all patients, including Plaintiff and Class members, its Notice of Privacy Practices Statement, which states that:

> We greatly respect your privacy and value the relationship we have with you and your patients. That is why we have this Privacy Policy: it describes the types of personal information we may collect on our website (bakodx.com) (the "Site"), how we may use that information, with whom we may share it, and the measures we take to protect the security of the information. In addition, we describe the choices you can make about how we use the information you provide to us. We also provide you direction on how you can reach us to update certain information you've given us, ask us not to send you future communications, or answer any questions you may have about our privacy practices.[1]

30.    Likewise, Defendant's Notice of Privacy Practices contains a section on Uses and Disclosures With Your Authorization, which states that:

> BAKO cannot use your Protected Health Information for anything other than the reasons mentioned above, without your signed "Authorization." An Authorization is a written document signed by you giving us permission to use or disclose your Protected Health Information for the purposes you specifically set forth in the Authorization. For instance, we may not sell your Protected Health Information to any party without your specific authorization. Additionally, we must obtain your authorization for (1) any communications regarding products or services relating to your treatment, case management or care coordination, or alternative treatments, therapies, provides or care settings when they are subsidized by a third party that may benefit from the communication; and (2) prior to using your Protected Health

---

[1] Bako Diagnostics, "Notice of Privacy Practices Statement," Effective Date: June 9, 2021, https://bakodx.com/privacy/, last visited on March 4, 2022.

8

Class Action Complaint

Information to send you any marketing materials that are not permissible treatment or health care operations communications as stated above.

You may revoke the Authorization, at any time, by delivering a written statement to the BAKO Privacy Officer identified below. If you revoke your Authorization, BAKO will no longer use or disclose your Protected Health Information as permitted by your Authorization. However, your revocation of Authorization will not reverse the use or disclosure of your Protected Health Information made while your Authorization was in effect.

You have the right to request that BAKO limit its uses and disclosures of Protected Health Information in relation to treatment, payment, health care operations, and health services, or not use or disclose your Protected Health Information for these reasons at all. You also have the right to request BAKO restrict the use or disclosure of your Protected Health Information to family members or personal representatives. Any such request must be made in writing to BAKO's Privacy Officer listed below and must state the specific restriction requested and to whom that restriction would apply. BAKO is not required to agree to a restriction that you request, except that we must honor your request to restrict disclosures of Protected Health Information to a health plan that you have paid for in full out of pocket. BAKO may not be able to honor a restriction that you request if it conflicts with disclosure requirements mandated by law. However, if it does agree to the requested restriction, it may not violate that restriction except as necessary to allow the provision of emergency medical care to you.[2]

31.     Notwithstanding the foregoing assurances and promises, Defendant failed to protect the Personal and Medical Information of Plaintiff and other Class members from cyber criminals using relatively unsophisticated means to dupe its patients, as conceded in the Notice to the Breach Victims.

32.     If Defendant truly understood the importance of safeguarding patients' Personal and Medical Information, it would acknowledge its responsibility for the harm it has caused, and would compensate class members, provide long-term protection for Plaintiff and the Class, agree to Court-ordered and enforceable changes to its cybersecurity policies and procedures, and adopt regular and intensive training to ensure that a data breach like this never happens again.

---

[2] Id.

9

33.     Defendant's data security obligations were particularly important given the known substantial increase in data breaches in the healthcare industry, including the recent massive data breach involving Rite Aid, Discovery Practice Management, Fairchild Medical Center, Scripps Health, HealthNet, LabCorp, Quest Diagnostics, and American Medical Collections Agency. And given the wide publicity given to these data breaches, there is no excuse for Defendant's failure to adequately protect Plaintiff and Class members' Personal and Medical Information.

34.     That information, is now in the hands of cyber criminals who will use it if given the chance. Much of this information is unchangeable and loss of control of this information is remarkably dangerous to consumers.

**C.     Defendant had an Obligation to Protect Personal and Medical Information under Federal and State Law and the Applicable Standard of Care**

35.     Defendant is an entity covered by HIPAA (45 C.F.R. § 160.102). As such, it is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

36.     HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

37.     HIPAA's Security Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is held or transferred in electronic form.

38.     HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

39.     "Electronic protected health information" is "individually identifiable health information . . . that is (i) Transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

40.     HIPAA's Security Rule requires Defendant to do the following:

10

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

41.    HIPAA also required Defendant to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

42.    HIPAA also required Defendant to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

43.    The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, also required Defendant to provide notice of the breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*."[3]

44.    Defendant was also prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

---

[3] Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for professionals/breach-notification/index.html (emphasis added).

11

Class Action Complaint

45.    As described before, Defendant is also required (by the California Consumer Records Act ("CCRA"), CMIA and various other states' laws and regulations) to protect Plaintiff and Class members' Personal and Medical Information, and further, to handle any breach of the same in accordance with applicable breach notification statutes.

46.    In addition to their obligations under federal and state laws, Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Personal and Medical Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Breach Victims to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the Personal and Medical Information of the Breach Victims.

47.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to design, maintain, and test its computer systems and email system to ensure that the Personal and Medical Information in Defendant's possession was adequately secured and protected.

48.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to create and implement reasonable data security practices and procedures to protect the Personal and Medical Information in their possession, including adequately training its employees and others who accessed Personal Information within its computer systems on how to adequately protect Personal and Medical Information.

49.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to implement processes that would detect a breach on its data security systems in a timely manner.

50.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to act upon data security warnings and alerts in a timely fashion.

12

Class Action Complaint

51.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to adequately train and supervise its employees to identify and avoid any phishing emails that make it past its email filtering service.

52.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Personal and Medical Information from theft because such an inadequacy would be a material fact in the decision to entrust Personal and Medical Information with Defendant.

53.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to disclose in a timely and accurate manner when data breaches occurred.

54.    Defendant owed a duty of care to Breach Victims because they were foreseeable and probable victims of any inadequate data security practices.

**D.    A Data Breach like Defendant's Results in Debilitating Losses to Consumers**

55.    Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[4] Cyber criminals can leverage Plaintiff and Class members' Personal and Medical Information that was stolen in the Data Breach to commit thousands-indeed, millions-of additional crimes, including opening new financial accounts in Breach Victims' names, taking out loans in Breach Victims' names, using Breach Victims' names to obtain medical services and government benefits, using Breach Victims' Personal Information to file fraudulent tax returns, using Breach Victims' health insurance information to rack up massive medical debts in their names, using Breach Victims' health information to target them in other phishing and hacking intrusions based on their individual health needs, using Breach Victims' information to obtain government benefits, filing fraudulent tax returns using Breach Victims' information, obtaining driver's licenses in Breach Victims' names but with another person's photograph, and giving false information to police during an arrest. Even worse, Breach Victims could be arrested for crimes identity thieves have committed.

---

[4] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info.    Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

56.    Personal and Medical Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black-market for years.

57.    This was a financially motivated data breach, as the only reason cyber criminals stole Plaintiff and the Class members' Personal and Medical Information from Defendant was to engage in the kinds of criminal activity described above, which will result, and has already begun to, in devastating financial and personal losses to Breach Victims.

58.    This is not just speculative. As the FTC has reported, if hackers get access to Personal and Medical Information, they *will* use it.[5]

59.    Hackers may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information **may continue for years**. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[6]

60.    For instance, with a stolen social security number, which is part of the Personal and Medical Information compromised in the Data Breach, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[7] Identity thieves can also use the information stolen from Breach Victims to qualify for expensive medical care and leave them and their contracted health insurers on the hook for massive medical bills.

61.    Medical identity theft is one of the most common, most expensive, and most difficult to prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is

---

[5] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[6] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu (emphasis added).

[7] *See, e.g.*, Christine Di Gangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with- your-social-security-number-108597/.

14

1    more "than identity thefts involving banking and finance, the government and the military, or

2    education."[8]

3        62.    "Medical identity theft is a growing and dangerous crime that leaves its victims with

4    little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum.

5    "Victims often experience financial repercussions and worse yet, they frequently discover erroneous

6    information has been added to their personal medical files due to the thief's activities."[9]

7        63.    As indicated by Jim Trainor, second in command at the FBI's cyber security division:

8    "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social

9    Security and insurance numbers, and even financial information all in one place. Credit cards can

10    be, say, five dollars or more where PHI can go from $20 say up to—we've seen $60 or $70

11    [(referring to prices on dark web marketplaces)]."[10] A complete identity theft kit that includes health

12    insurance credentials may be worth up to $1,000 on the black market.[11]

13        64.    If, moreover, the cyber criminals also manage to steal financial information,

14    credit and debit cards, health insurance information, driver's licenses and passports—as they did

15    here—there is no limit to the amount of fraud that Defendant has exposed the Breach Victims to.

16        65.    A study by Experian found that the average total cost of medical identity theft is

17    "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to

18    pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[12] Almost

19    half of medical identity theft victims lose their healthcare coverage as a result of the incident, while

20

21

---

22    [8] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.

23    [9] *Id.*

24    [10] ID Experts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, https://www.idexpertscorp.com/knowedge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-

25    private-healthcare-dat

26    [11] *Managing cyber risks in an interconnected world*, PRICEWATERHOUSECOOPERS: Key findings from The Global State of Information Security Survey 2015,https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global- state-of-information-security-survey-2015.pdf

27    [12] *See* Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010),

28    https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.

1 | nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve

2 | their identity theft at all.[13]

3 |    66.    As described above, identity theft victims must spend countless hours and large

4 | amounts of money repairing the impact to their credit.[14]

5 |    67.    The danger of identity theft is compounded when a minor's Personal and Medical

6 | Information is compromised because minors typically have no credit reports to monitor. Thus, it can

7 | be difficult to monitor because a minor cannot simply place an alert on their credit report or "freeze"

8 | their credit report when no credit report exists.

9 |    68.    Defendant did not even bother to offer identity monitoring to Plaintiff and the Class.

10 | While some harm has begun already, the worst may be yet to come. There may be a time lag between

11 | when harm occurs versus when it is discovered, and also between when Personal and Medical

12 | Information is stolen and when it is used. Even if it did, identity monitoring only alerts someone to

13 | the fact that they have already been the victim of identity theft (*i.e.*, fraudulent acquisition and use

14 | of another person's Personal and Medical Information)—it does not prevent identity theft.[15] This is

15 | especially true for many kinds of medical identity theft, for which most credit monitoring plans

16 | provide little or no monitoring or protection.

17 |    69.    As a direct and proximate result of the Data Breach, Plaintiff and the Class have been

18 | placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity

19 | theft. Plaintiff and the Class must now take the time and effort to mitigate the actual and potential

20 | impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with

21 | credit reporting agencies, contacting their financial institutions, healthcare providers, closing or

22 | modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports,

23 | and health insurance account information for unauthorized activity for years to come.

24 |

---

25 | [13] *Id.*; *see also Healthcare Data Breach: What to Know About them and What to Do After One*, EXPERIAN,

26 | https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/.

27 | [14] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

28 | [15] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, Nov. 30, 2017, https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html.

16

70.    Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

a. Trespass, damage to, and theft of their personal property including Personal and Medical Information;

b. Improper disclosure of their Personal and Medical Information;

c. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal and Medical Information being placed in the hands of criminals and having been already misused;

d. The imminent and certainly impending risk of having their confidential medical information used against them by spam callers to defraud them;

e. Damages flowing from Defendant's untimely and inadequate notification of the data breach;

f. Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cyber criminals have their Personal and Medical Information and that fraudsters have already used that information to initiate spam calls to members of the Class;

g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

h. Ascertainable losses in the form of deprivation of the value of customers' personal information for which there is a well-established and quantifiable national and international market;

i. The loss of use of and access to their credit, accounts, and/or funds;

j. Damage to their credit due to fraudulent use of their Personal and Medical Information; and

k. Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

71.    Moreover, Plaintiff and Class have an interest in ensuring that their information, which remains in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards.

17

72.     Despite acknowledging the harm caused by the Data Breach on Plaintiff and Class members, Defendant does nothing to reimburse Plaintiff and Class members for the injuries they have already suffered.

**V.**

**CLASS ACTION ALLEGATIONS**

73.     Class Representative Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated.  The putative class that Class Representative Plaintiff seeks to represent is composed of:

> All citizens of the State of California who received care at a facility, satellite, or urgent care location of healthcare providers that were served by Defendant on or before December 28, 2021, and who received notices from Defendant that their information was compromised (hereinafter the "Class").

Excluded from the Class are the natural persons who are directors, and officers, of the Defendant.   Class Representative Plaintiff expressly disclaims that he is seeking a class-wide recovery for personal injuries attributable to Defendant's conduct.

74.     Plaintiff is informed and believes that the total number of Class Members exceeds 50,000 persons, and as such, the members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of the Class members is unknown to Class Representative Plaintiff at this time, such information can be ascertained through appropriate discovery, from records maintained by Defendant.

75.     There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Class Representative Plaintiff's claims are typical of the members of the class, and Class Representative Plaintiff can fairly and adequately represent the interests of the Class.

76.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     Whether Defendant failed to adequately safeguard Plaintiff and the Class' Personal and Medical Information;

(b)     Whether Defendant failed to protect Plaintiff and the Class' Personal and Medical Information;

18

(c)    Whether Defendant's email and computer systems and data security practices used to protect Plaintiff and the Class' Personal and Medical Information violated the FTC Act, HIPAA, CMIA, CCRA and/or Defendant's other duties;

(d)    Whether Defendant violated the data security statutes and data breach notification statutes applicable to Plaintiff and the Class;

(e)    Whether Defendant failed to notify Plaintiff and members of the Class about the Data Breach expeditiously and without unreasonable delay after the Data Breach was discovered;

(f)    Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Breach Victims' Personal and Medical Information properly and as promised;

(g)    Whether Defendant acted negligently in failing to safeguard Plaintiff and the Class' Personal and Medical Information, including whether its conduct constitutes negligence *per se*;

(h)    Whether Defendant entered into implied contracts with Plaintiff and the members of the Class that included contract terms requiring Defendant to protect the confidentiality of Personal and Medical Information and have reasonable security measures;

(i)    Whether Defendant violated the consumer protection statutes, data breach notification statutes, and state medical privacy statutes applicable to Plaintiff and the Class;

(j)    Whether Defendant failed to notify Plaintiff and Breach Victims about the Data Breach as soon as practical and without delay after the Data Breach was discovered;

(k)    Whether Defendant's conduct described herein constitutes a breach of their implied contracts with Plaintiff and the Class;

(l)    Whether Plaintiff and the members of the Class are entitled to damages as a result of Defendant's wrongful conduct;

(m)    What equitable relief is appropriate to redress Defendant's wrongful conduct; and

(n)    What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class.

Class Representative Plaintiff's claims are typical of those of the other Class members because Class Representative Plaintiff, like every other Class member, was exposed to virtually identical conduct and is entitled to nominal damages of one thousand dollars ($1,000) per violation pursuant to Civil Code §§ 56.101 and 56.36(b)(1).

77.    Class Representative Plaintiff will fairly and adequately protect the interests of the Class. Moreover, Class Representative Plaintiff has no interest that is contrary to or in conflict with those of the Class he seeks to represent during the Class Period. In addition, Class Representative

19

1  Plaintiff has retained competent counsel experienced in class action litigation to further ensure such

2  protection and intend to prosecute this action vigorously.

3      78.    The prosecution of separate actions by individual members of the Class would create

4  a risk of inconsistent or varying adjudications with respect to individual members of the Class,

5  which would establish incompatible standards of conduct for the Defendant in the State of California

6  and would lead to repetitious trials of the numerous common questions of fact and law in the State

7  of California. Class Representative Plaintiff knows of no difficulty that will be encountered in the

8  management of this litigation that would preclude its maintenance as a class action. As a result, a

9  class action is superior to other available methods for the fair and efficient adjudication of this

10 controversy.

11     79.    Proper and sufficient notice of this action may be provided to the Class members

12 through direct mail.

13     80.    Moreover, the Class members' individual damages are insufficient to justify the cost

14 of litigation, so that in the absence of class treatment, Defendant's violations of law inflicting

15 substantial damages in the aggregate would go unremedied without certification of the Class.

16 Absent certification of this action as a class action, Class Representative Plaintiff and the members

17 of the Class will continue to be damaged by the unauthorized release of their individual identifiable

18 medical information.

19                                  **VI.**

20                        <u>**CAUSES OF ACTION**</u>

21                       <u>**FIRST CAUSE OF ACTION**</u>
       **(Violations of the Confidentiality of Medical Information Act, Civil Code § 56, *et seq.*)**
22                       (Against All Defendants)

23     81.    Plaintiff and the Class incorporate by reference all of the above paragraphs of this

24 Complaint as though fully stated herein.

25     82.    Defendant is a "provider of health care," within the meaning of Civil Code §

26 56.05(m), and maintained and continues to maintain "medical information," within the meaning of

27 Civil Code § 56.05(j), of "patients" of the Defendant, within the meaning of Civil Code § 56.05(k).

28

Class Action Complaint

83.    Plaintiff and the Class are "patients" of Defendant within the meaning of Civil Code § 56.05(k). Furthermore, Plaintiff and the Class, as patients of Defendant, had their individually identifiable "medical information," within the meaning of Civil Code § 56.05(j), stored onto Defendant's server, and received treatment at one the hospital, satellite, or urgent care locations served by Defendant on or before December 28, 2021.

84.    On or about December 28, 2021, Defendant determined that the illegally accessed files involved Plaintiff and Class members' individual identifiable "medical information," within the meaning of Civil Code § 56.05(j),[16] including Plaintiff and the Class members' (1) information to identify and contact you, such as full name, date of birth, address, telephone number, and email address; (2) health insurance information, such as name of insurer, plan and/or group number, and member number; (3) medical information, such as medical record number, dates of service, provider and facility names, and specimen or test information; and (4) billing and claims information.

85.    Defendant was made aware of an unusual activity involving certain of its electronic files. Defendant immediately commenced an investigation to quickly assess the security of its systems. Through the investigation, Defendant determined that certain files were accessed and acquired between December 21 and 28, 2021 without authorization. During its investigation, Defendant determined that the information of certain individuals were present in the relevant files.

86.    As a result of Defendant's above-described conduct, Plaintiff and the Class have suffered damages from the unauthorized release of their individual identifiable "medical information" made unlawful by Civil Code §§ 56.10 and 56.101.

87.    Because Civil Code § 56.101 allows for the remedies and penalties provided under Civil Code § 56.36(b), Plaintiff individually and on behalf of the Class seek nominal damages of

---

[16] Pursuant to Civil Code § 56.05(j), "Medical information" means "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care...regarding a patient's medical history, mental or physical condition, or treatment. 'Individually Identifiable' means that the medical information includes or contains any elements of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity." As alleged herein, Defendant's unencrypted server contained Plaintiff and the Class members' names, dates of birth, and prescription information, and thus contained individually identifiable medical information as defined by Civil Code § 56.05(j)

21

one thousand dollars ($1,000) for each violation under Civil Code § 56.36(b)(1); and Plaintiff individually seeks actual damages suffered, if any, pursuant to Civil Code § 56.36(b)(2).

### SECOND CAUSE OF ACTION
**(Violations of the CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq.*)**

88.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

89.   Defendant is headquartered in California. Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200, *et seq.*, by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in the UCL, including, but not limited to, the following:

    a.   by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard their Personal and Medical Information from unauthorized disclosure, release, data breach, and theft; representing and advertising that they did and would comply with the requirement of relevant federal and state laws pertaining to the privacy and security of the Class' Personal and Medical Information; and omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the Class' Personal and Medical Information;

    b.   by soliciting and collecting Class members' Personal and Medical Information with knowledge that the information would not be adequately protected; and by storing Plaintiff and Class members' Personal and Medical Information in an unsecure electronic environment;

    c.   by failing to disclose the Data Breach in a timely and accurate manner, in violation of Cal. Civ. Code §1798.82;

    d.   by violating the privacy and security requirements of HIPAA, 42 U.S.C. §1302d, *et seq.*;

<div align="center">22</div>

e.  by violating the CMIA, Cal. Civ. Code § 56, *et seq.*; and

f.  by violating the CCRA, Cal. Civ. Code § 1798.82.

90.  These unfair acts and practices were immortal, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class members. Defendant's practice was also contrary to legislatively declared and public policies that seek to protect consumer data and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected by laws like the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1302d, *et seq.*, CMIA, Cal. Civ. Code § 56, *et seq.*, and the CCRA, Cal. Civ. Code § 1798.81.5.

91.  As a direct and proximate result of Defendant's unfair and unlawful practices and acts, Plaintiff and the Class were injured and lost money or property, including but not limited to the overpayments Defendant received to take reasonable and adequate security measures (but did not), the loss of their legally protected interest in the confidentiality and privacy of their Personal and Medical Information, and additional losses described above.

92.  Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff and Class members' Personal and Medical Information and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Class.

93.  The conduct and practices described above emanated from California where decisions related to Defendant's advertising and data security were made.

94.  Plaintiff seeks relief under the UCL, including restitution to the Class of money or property that the Defendant may have acquired by means of Defendant's deceptive, unlawful, and unfair business practices, declaratory relief, attorney fees, costs and expenses (pursuant to Cal. Code Civ. P. § 1021.5), and injunctive or other equitable relief.

//

//

//

23

**THIRD CAUSE OF ACTION**
(Violations of the CALIFORNIA CONSUMER RECORDS ACT, Cal. Civ. Code § 1798.82, *et seq.*)

95.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

96.     Section 1798.2 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonable delay . . . ."

97.     The CCRA further provides: "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b).

98.     Any person or business that is required to issue a security breach notification under the CCRA shall meet all of the following requirements:

a. The security breach notification shall be written in plain language;

b. The security breach notification shall include, at a minimum, the following information:

i. The name and contact information of the reporting person or business subject to this section;

ii. A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

iii. If the information is possible to determine at the time the notice is provided, then any of the following:

1. The date of the breach;

24

2. The estimated date of the breach; or

3. The date range within which the breach occurred. The notification shall also include the date of the notice.

iv. Whether notification was delayed as a result of law enforcement investigation, if that information is possible to determine at the time the notice is provided;

v. A general description of the breach incident, if that information is possible to determine at the time the notice is provided; and

vi. The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a Social Security number or a driver's license or California identification card number.

99.    The Data Breach described herein constituted a "breach of the security system" of Defendant.

100.    As alleged above, Defendant unreasonably delayed informing Plaintiff and Class members about the Data Breach, affecting their Personal and Medical Information, after Defendant knew the Data Breach had occurred.

101.    Defendant failed to disclose to Plaintiff and the Class, without unreasonable delay and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, Personal and Medical Information when Defendant knew or reasonably believed such information had been compromised.

102.    Defendant's ongoing business interests gave Defendant incentive to conceal the Data Breach from the public to ensure continued revenue.

103.    Upon information and belief, no law enforcement agency instructed Defendant that timely notification to Plaintiff and the Class would impede its investigation.

104.    As a result of Defendant's violation of Cal. Civ. Code § 1798.82, Plaintiff and the Class were deprived of prompt notice of the Data Breach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection or requesting a credit freeze. These measures could have prevented some of the damages suffered by Plaintiff and Class members because their stolen information would have had less value to identity thieves.

105.    As a result of Defendant's violation of Cal. Civ. Code § 1798.82, Plaintiff and the Class suffered incrementally increased damages separate and distinct from those simply caused by the Data Breach itself.

106.    Plaintiff and the Class seek all remedies available under Cal. Civ. Code § 1798.84, including, but not limited to the damages suffered by Plaintiff and the other Class members as alleged above and equitable relief.

107.    Defendant's misconduct as alleged herein is fraud under Cal. Civ. Code § 3294(c)(3) in that it was deceit or concealment of a material fact known to the Defendant conducted with the intent on the part of Defendant of depriving Plaintiff and the Class of "legal rights or otherwise causing injury." In addition, Defendant's misconduct as alleged herein is malice or oppression under Cal. Civ. Code § 3294(c)(1) and (c) in that it was despicable conduct carried on by Defendant with a willful and conscious disregard of the rights or safety of Plaintiff and the Class and despicable conduct that has subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights. As a result, Plaintiff and the Class are entitled to punitive damages against Defendant under Cal. Civ. Code § 3294(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendant:

a.    An order certifying this action as a class action under Code of Civil Procedure §382, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b.    A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual and statutory damages, including statutory damages under the CMIA, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper.

c.    An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein, including, but not limited to:

Class Action Complaint

i.     Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

ii.    Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

iii.   Ordering that Defendant audit, test, and train their security personnel regarding any new or modified procedures;

iv.    Ordering that Defendant's segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

v.     Ordering that Defendant purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

vi.    Ordering that Defendant conduct regular database scanning and securing checks;

vii.   Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

viii.  Ordering Defendant to meaningfully educate its current, former, and prospective employees and subcontractors about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps they must take to protect themselves.;

d.     An order requiring Defendant to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

e.     A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law, including the

27

CCRA, Cal. Civ. Code § 1798.84(g), UCL, Cal. Bus. & Prof. Code § 17082, CMIA, Cal. Civ. Code 56.35; and

     f.     An award of such other and further relief as this Court may deem just and proper.

<div align="center">

**POTTER HANDY LLP**

/s/ James M. Treglio

</div>

Dated: March 7, 2022        By: _____

<div align="center">

Mark D. Potter, Esq.
James M. Treglio, Esq.
Attorneys for the Plaintiff and the Class

</div>

<div align="center">

**DEMAND FOR JURY TRIAL**

</div>

Plaintiff and the Class hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

<div align="center">

**POTTER HANDY LLP**

/s/ James M. Treglio

</div>

Dated: March 7, 2022        By: _____

<div align="center">

Mark D. Potter, Esq.
James M. Treglio, Esq.
Attorneys for the Plaintiff and the Class

</div>

<div align="center">

28

</div>

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):* <br> James M. Treglio (SBN 228077) <br> Potter Handy, LLP <br> 8033 Linda Vista Rd, Suite 200, San Diego, CA 92111 <br><br> TELEPHONE NO.: (858) 375-7385   FAX NO. *(Optional):* 888-422-5191 <br> ATTORNEY FOR *(Name):* Plaintiff, Aaron Tamraz | **FOR COURT USE ONLY** <br><br> **ELECTRONICALLY FILED** <br> Superior Court of California, <br> County of San Diego <br><br> **03/07/2022** at 03:26:31 PM <br> Clerk of the Superior Court <br> By Danielle Hansen, Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS: 325 S. Melrose Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Vista, CA 92081
BRANCH NAME: North County Division

CASE NAME:
Tamraz v. Bakotic Pathology Associates, L.L.C. d/b/a Bako Pathology Associates, et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited <br> (Amount <br> demanded <br> exceeds $25,000) | [ ] Limited <br> (Amount <br> demanded is <br> $25,000) | [ ] Counter  [ ] Joinder <br><br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | | 37-2022-00008859-CU-MC-NC |
| | | | | JUDGE: <br> DEPT.:  Judge Blaine K. Bowman |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[x] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* 3- Violations of the CMIA, Civil Code § 56, et seq, UCL, CCRA
5. This case [x] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 7, 2022

James M. Treglio                                            ▶ /s/ James M. Treglio
_____                    _____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 325 S Melrose DRIVE |
| MAILING ADDRESS: | 325 S Melrose DRIVE |
| CITY AND ZIP CODE: | Vista, CA 92081-6695 |
| DIVISION: | North County |
| TELEPHONE NUMBER: | (760) 201-8031 |

| PLAINTIFF(S) / PETITIONER(S): | AARON TAMRAZ |
|---|---|
| DEFENDANT(S) / RESPONDENT(S): | BAKOTIC PATHOLOGY ASSOCIATES LLC et.al. |

| TAMRAZ VS BAKOTIC PATHOLOGY ASSOCIATES LLC [IMAGED] | |
|---|---|
| **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL)** | CASE NUMBER:<br>37-2022-00008859-CU-MC-NC |

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge: Blaine K. Bowman                                    Department: N-31

**COMPLAINT/PETITION FILED:** 03/07/2022

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 08/26/2022 | 09:00 am | N-31 | Blaine K. Bowman |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

---

SDSC CIV-721 (Rev. 04-21)          **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL)**                    Page: 1

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases. Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing. E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court. All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program." This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain. The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150. Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed. Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

Page: 2