

**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Tel: (858) 375-7385
Fax: (888) 422-5191

Attorneys for Plaintiff AARON TAMRAZ, on behalf of himself and all others similarly situated,

## UNITED STATES DISTRICT COURT BY AND FOR THE

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON TAMRAZ, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> BAKOTIC PATHOLOGY ASSOCIATES, L.L.C. d/b/a BAKO PATHOLOGY ASSOCIATES, a Georgia Limited Liability Company; BAKO PATHOLOGY HOLDINGS CORPORATION, a Delaware corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No.: 3:22-cv-00725-BAS-WVG <br><br> **CLASS ACTION** <br><br> **FIRST AMENDED CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (FOR VIOLATIONS OF:** <br><br> **(1) THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CIVIL CODE §§ 56, *ET SEQ*.);** <br> **(2) CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq.;*** <br><br> **DEMAND FOR JURY TRIAL** |

First Amended Class Action Complaint

Class Representative Plaintiff AARON TAMRAZ ("Class Representative Plaintiff"), by and through his attorneys, individually and on behalf of others similarly situated, alleges upon information and belief as follows:

# I.

## **INTRODUCTION**

1.      Under the Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.* (hereinafter referred to as the "Act"), Plaintiff AARON TAMRAZ ("Plaintiff"), and all other persons similarly situated, had a right to keep their personal medical information provided to Defendants BAKOTIC PATHOLOGY ASSOCIATES, L.L.C. d/b/a BAKO PATHOLOGY ASSOCIATES and BAKO PATHOLOGY HOLDINGS CORPORATION ("Bako Diagnostics" or "Defendants") confidential.  The short title of the Act states, "The Legislature hereby finds and declares that persons receiving health care services have a right to expect that the confidentiality of individual identifiable medical information derived by health service providers be reasonably preserved.  It is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable medical information, while permitting certain reasonable and limited uses of that information." The Act specifically provides that "a provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization...." Civil Code. § 56.10(a).  The Act further provides that "Every provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall be subject to the remedies ... provided under

1

subdivisions (b) ... of Section 56.36."  Civil Code § 56.101(a).

2.     Civil Code § 56.36(b) provides Plaintiff, and all other persons similarly situated, with a private right to bring an action against Defendants for violation of Civil Code § 56.101 by specifically providing that "[i]n addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: (1) ... nominal damages of one thousand dollars ($1,000).  In order to recover under this paragraph, *it shall not be necessary that the plaintiff suffered or was threatened with actual damages*. (2) The amount of actual damages, if any, sustained by the patient."  (Emphasis added.)

3.     This class action is brought on behalf of Plaintiff and a putative class defined as all citizens of the State of California who received care at a facility, satellite, or urgent care location of healthcare providers that were served by Defendants on or before December 28, 2021, and who received notices from Defendants that their information was compromised ("Breach Victims," the "Class," or the "Class Members").

4.     As alleged more fully below, Defendants created, maintained, preserved, and stored Plaintiff's and the Class members' personal medical information onto the Defendants' computer network prior to December 28, 2021.  Due to Defendants' mishandling of personal medical information recorded onto the Defendants' computer network, there was an unauthorized release of Plaintiff's and the Class members' confidential medical information that occurred on or about December 21, 2021 to December 28, 2021, in violation of Civil Code § 56.101 of the Act.

5.     As alleged more fully below, Defendants negligently created, maintained, preserved, and stored Plaintiff's and the Class members' confidential medical information in a non-encrypted format onto a data server which became accessible to an unauthorized person, without Plaintiff's and the Class members' prior written authorization. This act of providing unauthorized access to Plaintiff's and the

2

Class Members' confidential medical information onto the internet continuously constitutes an unauthorized release of confidential medical information in violation of Civil Code § 56.101 of the Act.  Because Civil Code § 56.101 allows for the remedies and penalties provided under Civil Code § 56.36(b), Class Representative Plaintiff, individually and on behalf of others similarly situated, seeks nominal damages of one thousand dollars ($1,000) for each violation under Civil Code § 56.36(b)(1).  Additionally, Class Representative Plaintiff, individually and on behalf of others similarly situated, seeks injunctive relief for unlawful violations of Business and Professions Code §§ 17200, *et seq*.

6.     Class Representative Plaintiff does not seek any relief greater than or different from the relief sought for the Class of which Plaintiff is a member. The action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit, whether pecuniary or non-pecuniary, for a large class of persons.  Private enforcement is necessary and places a disproportionate financial burden on Class Representative Plaintiff in relation to Class Representative Plaintiff's stake in the matter.

## II.

## <u>JURISDICTION AND VENUE</u>

7.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d), in that according to Defendants' Notice of Removal (1) the Class as defined above has 100 or more members; (2) the aggregate claim exceeds $5 million, exclusive of interest and costs; and (3) Plaintiffs and the Class are citizens of the State of California, and Defendants are citizens of the State of Georgia and/or Delaware.

8.     At all relevant times, Plaintiff and the Class Members are citizens of the State of California who utilized Defendants' pathology services in California.  At all relevant times, Plaintiff and the Class Members, through their physicians and/or

First Amended Class Action Complaint

employers, utilized Defendants' services to provide testing for, among other things, COVID-19 testing, drug testing, and other pathology services.

9.     The Court also has personal jurisdiction over the parties because Plaintiff and the Defendants have submitted to the jurisdiction of the Court and Defendants have transacted business within this judicial district, in San Diego County and in the State of California; and the violations of law herein described have been committed within this judicial district, in San Diego County and in the State of California. Moreover, by doing business in this judicial district and committing violations of the California Civil Code and the California Business and Professions Code in this judicial district, Defendants' conduct has had an adverse effect upon the finances of residents of this judicial district.

## III.

## PARTIES

## A.    PLAINTIFF

10.     Class Representative Plaintiff AARON TAMRAZ is a resident of the State of California.  At all times relevant, Plaintiff was a patient of Defendants through one of the healthcare providers served by Defendants. Plaintiff received medical treatment from Defendants, and was a patient, as defined by Civil Code § 56.05(k). Plaintiff's individual identifiable medical information derived by Defendants in electronic form was in possession of Defendants, including but not limited to Plaintiff's medical history, mental or physical condition, or treatment, including diagnosis and treatment dates.  Such medical information included or contained an element of personal identifying information sufficient to allow identification of the individual, such as Plaintiff's name, date of birth, addresses, medical record number, insurance provider, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals Plaintiff's identity. Since receiving treatment at

4

Defendants' facilities, Plaintiff has received numerous solicitations by mail from third parties at an address he only provided to Defendants.

11.    PLAINTIFF received from Defendants a notification that his personal medical information and his personal identifying information were disclosed when an unauthorized person gained access to Defendants' servers.

**B.    DEFENDANTS**

12.    Defendant Bakotic Pathology Associates, L.L.C. d/b/a Bako Pathology Associates is a Georgia limited liability company, with its principal place of business located at 6240 Shiloh Rd., Alpharetta, GA 30005. Defendant operates throughout the country including in San Diego, California. At all times relevant, Defendant is a "provider of health care" as defined by Civil Code § 56.05(m). Prior to December 28, 2021, Defendant created, maintained, preserved, and stored Plaintiff's and the Class members' individually identifiable medical information onto Defendant's computer network, including but not limited to Plaintiff's and the Class members' medical history, mental or physical condition, or treatment, including diagnosis and treatment dates. Such medical information included or contained an element of personal identifying information sufficient to allow identification of the individual, such as Plaintiff's and the Class members' names, dates of birth, addresses, medical record numbers, insurance providers, electronic mail addresses, telephone numbers, or social security numbers, or other information that, alone or in combination with other publicly available information, reveals Plaintiff's and the Class members' identities.

13.    Defendant Bako Pathology Holdings Corporation is a Delaware corporation, with its principal place of business located at 6240 Shiloh Rd., Alpharetta, GA 30005. Defendant operates throughout the country including in San Diego, California. At all times relevant, Defendant is a "provider of health care" as defined by Civil Code § 56.05(m). Prior to December 28, 2021, Defendant created, maintained, preserved, and stored Plaintiff's and the Class members' individually

5

identifiable medical information onto Defendant's computer network, including but not limited to Plaintiff's and the Class members' medical history, mental or physical condition, or treatment, including diagnosis and treatment dates.  Such medical information included or contained an element of personal identifying information sufficient to allow identification of the individual, such as Plaintiff's and the Class members' names, dates of birth, addresses, medical record numbers, insurance providers, electronic mail addresses, telephone numbers, or social security numbers, or other information that, alone or in combination with other publicly available information, reveals Plaintiff's and the Class members' identities.

## C.     DOE DEFENDANTS

14.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to the Plaintiff, who therefore sues the Defendants by such fictitious names under the Code of Civil Procedure § 474.  Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiff will seek leave of court and/or amend this complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES 1 through 100 when such identities become known.  Any reference made to a named Defendant by specific name or otherwise, individually or plural, is also a reference to the actions or inactions of DOES 1 through 100, inclusive.

## D.     AGENCY/AIDING AND ABETTING

15.     At all times herein mentioned, Defendants, and each of them, were an agent or joint venturer of each of the other Defendants, and in doing the acts alleged herein, were acting with the course and scope of such agency.  Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

16.     Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff and the Class, as alleged herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

**IV.**

**FACTUAL ALLEGATIONS**

**A.      The Data Breach**

17.     On or around February 25, 2022, Defendants issued a letter (the "Notice") to individuals, including Plaintiff, providing, for the first time, a notice of a "potential unauthorized activity in our computer network" that Defendants maintain for certain healthcare providers for whom it provides laboratory services ("Facilities") and which contained some information relating to certain individuals.

18.     In the Notice, Defendants notified consumers that when it became aware of the unusual activity on December 28, 2021, it "immediately took steps to prevent any further unauthorized activity and engaged a national forensic firm to investigate the incident and assist with remediation efforts."

19.     Almost two months later or on February 25, 2022, Defendants sent  the Notice stating that "we have determined that an unauthorized third party was able to access certain systems that contained personal information and remove some data between December 21 and 28, 2021"  (the "Data Breach"). The information stated in the notification included, but not limited to, information to identify and contact patients or guarantors, such as full name, date of birth, address, telephone number, and email address; health insurance information, such as the name of insurer, plan and/or group number, and member number; medical information, such as Medical

Record Number, dates of service, provider and facility names, and specimen or test information; and billing and claims information, including financial account information.

20.    According to the California Confidentiality of Medical Information Act, Civil Code section 56.05(i), the information taken by the threat actors included both "Medical Information," and "Individually identifiable" information. Per the Code:

> "Medical information" means any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment. "Individually identifiable" means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individua "Medical information" means any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment. "Individually identifiable" means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual.

21.    By Defendants' own admission, the information taken by the threat actor included both individually identifiable information – name, date of birth, address, telephone number and email address – and medical information – health insurance information, dates of service, doctor's name, and specimen and/or test information. With the details contained in this information, a third party could easily determine the medical condition, medical history, and/or treatment of Plaintiffs and the Class Members.

22.     The Notice went on to say that as a result of the review, "we believe that your information may have been involved." Defendants confirmed that Plaintiff's information was present in the files that were illegally accessed from Defendants' server.  Defendants failed to state in its Notice when it identified that Plaintiff's information was included in the Data Breach.

23.     As noted above, Defendants determined that "personal information may have included one or more of the following elements: (1) information to identify and contact you, such as full name, date of birth, address, telephone number, and email address; (2) health insurance information, such as name of insurer, plan and/or group number, and member number; (3) medical information, such as medical record number, dates of service, provider and facility names, and specimen or test information; and (4) billing and claims information."

24.     This was a staggering coup for cyber criminals and a stunningly bad showing for Defendants.

25.     It is apparent from Defendants' Notice that the Personal and Medical information contained within the server was not encrypted.

26.     In spite of the severity of the Data Breach, Defendants have done very little to protect Breach Victims. In the Notice, Defendants state that they were notifying Breach Victims and encourage the Breach Victims to remain vigilant against incidents of identity theft and fraud, and to review their account statements and explanation of benefits forms, and to monitor their free credit reports for suspicious activity, and to detect errors. In effect, shirking its responsibility for the harm it has caused and putting it all on the Breach Victims.

27.     Defendants failed to adequately safeguard Plaintiff and Class members' Personal and Medical Information, allowing cyber criminals to access this wealth of priceless information and use it for more than two months before Defendants warned the criminals' victims, the Breach Victims, to be on the lookout.

28.    Defendants failed to spend sufficient resources on monitoring external incoming emails and training its employees to identify email-born threats and defend against them.

29.    Defendants have obligations created by the Health Insurance Portability and Accountability Act ("HIPAA"), the Confidentiality of Medical Information Act ("CMIA"), reasonable industry standards, its own contracts with its patients and employees, common law, and its representations to Plaintiff and Class members, to keep their Personal and Medical Information confidential and to protect the information from unauthorized access.

30.    Plaintiff and Class members provided their Personal and Medical Information to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with its obligations to keep such information confidential and secure from unauthorized access.

31.    Indeed, as discussed below, Defendants promised Plaintiff and Class members that it would do just that.

**B.    Defendants Expressly Promised to Protect Personal and Medical Information**

32.    Defendants provide all patients, including Plaintiff and Class members, its Notice of Privacy Practices Statement, which states that:

> We greatly respect your privacy and value the relationship we have with you and your patients.  That is why we have this Privacy Policy: it describes the types of personal information we may collect on our website (bakodx.com) (the "Site"), how we may use that information, with whom we may share it, and the measures we take to protect the security of the information.  In addition, we describe the choices you can make about how we use the information you provide to us. We also provide you direction on how you can reach us to update certain information you've given us, ask us not to send you future

First Amended Class Action Complaint

communications, or answer any questions you may have about our privacy practices.[1]

33.     Likewise, Defendants' Notice of Privacy Practices contains a section on Uses and Disclosures With Your Authorization, which states that:

> BAKO cannot use your Protected Health Information for anything other than the reasons mentioned above, without your signed "Authorization." An Authorization is a written document signed by you giving us permission to use or disclose your Protected Health Information for the purposes you specifically set forth in the Authorization. For instance, we may not sell your Protected Health Information to any party without your specific authorization. Additionally, we must obtain your authorization for (1) any communications regarding products or services relating to your treatment, case management or care coordination, or alternative treatments, therapies, provides or care settings when they are subsidized by a third party that may benefit from the communication; and (2) prior to using your Protected Health Information to send you any marketing materials that are not permissible treatment or health care operations communications as stated above.

> You may revoke the Authorization, at any time, by delivering a written statement to the BAKO Privacy Officer identified below. If you revoke your Authorization, BAKO will no longer use or disclose your Protected Health Information as permitted by your Authorization. However, your revocation of Authorization will not reverse the use or disclosure of your Protected Health Information made while your Authorization was in effect.

> You have the right to request that BAKO limit its uses and disclosures of Protected Health Information in relation to treatment, payment, health care operations, and health services, or not use or disclose your Protected Health Information for these reasons at all. You also have the right to request BAKO restrict the use or disclosure of your Protected Health Information to family members or personal representatives. Any such request must be made in writing to BAKO's Privacy Officer listed below and must state the specific restriction requested and to whom that restriction would apply. BAKO is not required to agree to a restriction that you request, except that we must honor your request to restrict

---

[1] Bako Diagnostics, "Notice of Privacy Practices Statement," Effective Date: June 9, 2021, https://bakodx.com/privacy/, last visited on March 4, 2022.

First Amended Class Action Complaint

disclosures of Protected Health Information to a health plan that you have paid for in full out of pocket. BAKO may not be able to honor a restriction that you request if it conflicts with disclosure requirements mandated by law. However, if it does agree to the requested restriction, it may not violate that restriction except as necessary to allow the provision of emergency medical care to you.[2]

34.    Notwithstanding the foregoing assurances and promises, Defendants failed to protect the Personal and Medical Information of Plaintiff and other Class members from cyber criminals using relatively unsophisticated means to dupe its patients, as conceded in the Notice to the Breach Victims.

35.    If Defendants truly understood the importance of safeguarding patients' Personal and Medical Information, it would acknowledge its responsibility for the harm it has caused, and would compensate class members, provide long-term protection for Plaintiff and the Class, agree to Court-ordered and enforceable changes to its cybersecurity policies and procedures, and adopt regular and intensive training to ensure that a data breach like this never happens again.

36.    Defendants' data security obligations were particularly important given the known substantial increase in data breaches in the healthcare industry, including the recent massive data breach involving Rite Aid, Discovery Practice Management, Fairchild Medical Center, Scripps Health, HealthNet, LabCorp, Quest Diagnostics, and American Medical Collections Agency. And given the wide publicity given to these data breaches, there is no excuse for Defendants' failure to adequately protect Plaintiff and Class members' Personal and Medical Information.

37.    That information, is now in the hands of cyber criminals who will use it if given the chance. Much of this information is unchangeable and loss of control of this information is remarkably dangerous to consumers.

//

//

---

[2] Id.

## C.    Defendants had an Obligation to Protect Personal and Medical Information under Federal and State Law and the Applicable Standard of Care

38.    Defendants are entities covered by HIPAA (45 C.F.R. § 160.102). As such, they are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

39.    HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

40.    HIPAA's Security Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is held or transferred in electronic form.

41.    HIPAA requires Defendants to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

42.    "Electronic protected health information" is "individually identifiable health information . . . that is (i) Transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

43.    HIPAA's Security Rule requires Defendants to do the following:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

13

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

44.     HIPAA also requires Defendants to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information."   45 C.F.R. § 164.306(e).

45.     HIPAA also requires Defendants to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

46.     The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, also required Defendants to provide notice of the breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*."[3]

47.     Defendants was also prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.,* 799 F.3d 236 (3d Cir. 2015).

48.     As described before, Defendants are also required (by the California Consumer Records Act ("CCRA"), CMIA and various other states' laws and regulations) to protect Plaintiff and Class members' Personal and Medical

---

[3] Breach Notification Rule, U.S.  Dep't of Health &   Human Services, https://www.hhs.gov/hipaa/for professionals/breach-notification/index.html (emphasis added).

Information, and further, to handle any breach of the same in accordance with applicable breach notification statutes.

49.    In addition to their obligations under federal and state laws, Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Personal and Medical Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Breach Victims to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the Personal and Medical Information of the Breach Victims.

50.    Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to design, maintain, and test its computer systems and email system to ensure that the Personal and Medical Information in Defendants' possession was adequately secured and protected.

51.    Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to create and implement reasonable data security practices and procedures to protect the Personal and Medical Information in their possession, including adequately training its employees and others who accessed Personal Information within its computer systems on how to adequately protect Personal and Medical Information.

52.    Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to implement processes that would detect a breach on its data security systems in a timely manner.

53.    Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to act upon data security warnings and alerts in a timely fashion.

54.    Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to adequately train and supervise its employees to identify and avoid any phishing emails that make it past its email filtering service.

55.    Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Personal and Medical Information from theft because such an inadequacy would be a material fact in the decision to entrust Personal and Medical Information with Defendants.

56.    Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to disclose in a timely and accurate manner when data breaches occurred.

57.    Defendants owed a duty of care to Breach Victims because they were foreseeable and probable victims of any inadequate data security practices.

**D.    A Data Breach like Defendants' Results in Debilitating Losses to Consumers**

58.    Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[4] Cyber criminals can leverage Plaintiff and Class members' Personal and Medical Information that was stolen in the Data Breach to commit thousands-indeed, millions-of additional crimes, including opening new financial accounts in Breach Victims' names, taking out loans in Breach Victims' names, using Breach Victims' names to obtain medical services and government benefits, using Breach Victims' Personal Information to file fraudulent tax returns, using Breach Victims' health insurance information to rack up massive medical debts in their names, using Breach Victims' health information to target them in other phishing and hacking intrusions based on their individual health needs, using Breach

---

[4] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info.    Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

Victims' information to obtain government benefits, filing fraudulent tax returns using Breach Victims' information, obtaining driver's licenses in Breach Victims' names but with another person's photograph, and giving false information to police during an arrest. Even worse, Breach Victims could be arrested for crimes identity thieves have committed.

59.    Personal and Medical Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black-market for years.

60.    This was a financially motivated data breach, as the only reason cyber criminals stole Plaintiff and the Class members' Personal and Medical Information from Defendants was to engage in the kinds of criminal activity described above, which will result, and has already begun to, in devastating financial and personal losses to Breach Victims.

61.    This is not just speculative. As the FTC has reported, if hackers get access to Personal and Medical Information, they *will* use it.[5]

62.    Hackers may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information **may continue for years**. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[6]

63.    For instance, with a stolen social security number, which is part of the Personal and Medical Information compromised in the Data Breach, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes,

---

[5] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[6] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu (emphasis added).

First Amended Class Action Complaint

and steal benefits.[7] Identity thieves can also use the information stolen from Breach Victims to qualify for expensive medical care and leave them and their contracted health insurers on the hook for massive medical bills.

64.    Medical identity theft is one of the most common, most expensive, and most difficult to prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more "than identity thefts involving banking and finance, the government and the military, or education."[8]

65.    "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[9]

66.    As indicated by Jim Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where PHI can go from $20 say up to—we've seen $60 or $70 [(referring to prices on dark web marketplaces)]."[10]  A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[11]

---

[7] *See, e.g.*, Christine Di Gangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with- your-social-security-number-108597/.

[8] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.

[9] *Id.*

[10] ID Experts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, https://www.idexpertscorp.com/knowedge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat

[11] *Managing cyber risks in an interconnected world*, PRICEWATERHOUSECOOPERS: Key findings from The Global State of Information Security Survey 2015,https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global- state-of-information-security-survey-2015.pdf

First Amended Class Action Complaint

67.    Moreover, if the cyber criminals also manage to steal financial information, credit and debit cards, health insurance information, driver's licenses and passports—as they did here—there is no limit to the amount of fraud that Defendants has exposed the Breach Victims to.

68.    A study by Experian found that the average total cost of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[12]    Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve their identity theft at all.[13]

69.    As described above, identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[14]

70.    The danger of identity theft is compounded when a minor's Personal and Medical Information is compromised because minors typically have no credit reports to monitor. Thus, it can be difficult to monitor because a minor cannot simply place an alert on their credit report or "freeze" their credit report when no credit report exists.

71.    Defendants did not even bother to offer identity monitoring to Plaintiff and the Class. While some harm has begun already, the worst may be yet to come. There may be a time lag between when harm occurs versus when it is discovered, and also between when Personal and Medical Information is stolen and when it is used. Even if it did, identity monitoring only alerts someone to the fact that they have

---

[12] *See* Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.

[13] *Id.*; *see also Healthcare Data Breach: What to Know About them and What to Do After One*, EXPERIAN, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/.

[14] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

First Amended Class Action Complaint

already been the victim of identity theft (*i.e.*, fraudulent acquisition and use of another person's Personal and Medical Information)—it does not prevent identity theft.[15] This is especially true for many kinds of medical identity theft, for which most credit monitoring plans provide little or no monitoring or protection.

72.    As a direct and proximate result of the Data Breach, Plaintiff and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.  Plaintiff and the Class must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

73.    Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

a. Trespass, damage to, and theft of their personal property including Personal and Medical Information;

b. Improper disclosure of their Personal and Medical Information;

c. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal and Medical Information being placed in the hands of criminals and having been already misused;

d. The imminent and certainly impending risk of having their confidential medical information used against them by spam callers to defraud them;

e. Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cyber criminals have their Personal and Medical Information

---

[15] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, Nov. 30, 2017, https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the- cost.html.

First Amended Class Action Complaint

and that fraudsters have already used that information to initiate spam calls to members of the Class;

   f. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

   g. Ascertainable losses in the form of deprivation of the value of customers' personal information for which there is a well-established and quantifiable national and international market;

   h. The loss of use of and access to their credit, accounts, and/or funds;

   i. Damage to their credit due to fraudulent use of their Personal and Medical Information; and

   j. Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

74.   Moreover, Plaintiff and Class have an interest in ensuring that their information, which remains in the possession of Defendants, is protected from further breaches by the implementation of security measures and safeguards.

75.   Despite acknowledging the harm caused by the Data Breach on Plaintiff and Class members, Defendants have done nothing to reimburse Plaintiff and Class members for the injuries they have already suffered.

## V.

## **CLASS ACTION ALLEGATIONS**

76.   Plaintiff brings this action on behalf of himself, the general public, and all other persons similarly situated pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

77.   Class Representative Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated. The putative class that Class Representative Plaintiff seeks to represent is composed of:

First Amended Class Action Complaint

All citizens of the State of California who received care at a facility, satellite, or urgent care location of healthcare providers that were served by Defendants on or before December 28, 2021, and who received notices from Defendants that their information was compromised (hereinafter the "Class").

Excluded from the Class are the natural persons who are directors, and officers, of the Defendants.  Class Representative Plaintiff expressly disclaims that he is seeking a class-wide recovery for personal injuries attributable to Defendants' conduct.

78.    This action has been brought and may be properly maintained as a class action, pursuant to the Federal Rule of Civil Procedure 23.

79.    Numerosity: Although Plaintiff does not, as yet, know the exact size of the class defined above, based upon the nature of the Defendants' business, Plaintiff is informed and believes that there are numerous members of the class defined above, and that such members are geographically dispersed throughout the State of California. Thus, the class defined above is sufficiently numerous to make joinder impracticable. The disposition of the claims of the members of the class defined above through this class action will benefit both the parties and this Court. In addition, the class defined above is readily identifiable from information and records in the possession of Defendants as well as the members of the class.

80.    Existence and Predominance of Commons Questions of Fact and Law – There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Class Representative Plaintiff's claims are typical of the members of the class, and Class Representative Plaintiff can fairly and adequately represent the interests of the Class.

81.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    Whether Defendants failed to adequately safeguard Plaintiff and the Class' Personal and Medical Information;

22

(b)   Whether Defendants failed to protect Plaintiff and the Class' Personal and Medical Information;

(c)   Whether Defendants' email and computer systems and data security practices used to protect Plaintiff and the Class' Personal and Medical Information violated the FTC Act, HIPAA, CMIA, CCRA and/or Defendants' other duties;

(d)   Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard Breach Victims' Personal and Medical Information properly and as promised;

(e)   Whether Defendants acted negligently in failing to safeguard Plaintiff and the Class' Personal and Medical Information, including whether its conduct constitutes negligence *per se*;

(f)   Whether Defendants entered into implied contracts with Plaintiff and the members of the Class that included contract terms requiring Defendants to protect the confidentiality of Personal and Medical Information and have reasonable security measures;

(g)   Whether Defendants violated the consumer protection statutes, data breach notification statutes, and state medical privacy statutes applicable to Plaintiff and the Class;

(h)   Whether Defendants' conduct described herein constitutes a breach of their implied contracts with Plaintiff and the Class;

(i)   Whether Plaintiff and the members of the Class are entitled to damages as a result of Defendants' wrongful conduct;

(j)   What equitable relief is appropriate to redress Defendants' wrongful conduct; and

(k)   What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class.

Class Representative Plaintiff's claims are typical of those of the other Class members because Class Representative Plaintiff, like every other Class member, was exposed to virtually identical conduct and is entitled to nominal damages of one thousand dollars ($1,000) per violation pursuant to Civil Code §§ 56.101 and 56.36(b)(1).

82.   <u>Typicality:</u>  Plaintiff's claims are typical of the claims of the Class since Plaintiff was notified by Defendants, like all other Class Members, that his medical information and personally identifiable information was unlawfully disclosed to

23

threat actors.  Furthermore, Plaintiff and all members of the Class sustained injury in fact by losing their right of privacy in medical information.

83.   Adequacy:  Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and intends to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

84.   Superiority:  The class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and members of the Class.  Although the monetary injury suffered by each individual Class member may total several hundred dollars, injury of such magnitude is nonetheless relatively small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

85.   Proper and sufficient notice of this action may be provided to each class member through notice by such means as direct mail, electronic mail, publication on the internet, and/or television, radio, and/or print media outlets.

86.   Plaintiff and the Class Members have suffered irreparable harm and damages as a result of Defendants' wrongful conduct as alleged herein, which is ongoing. Absent a representative action, Plaintiff and each Class Member continue to be damaged, thereby allowing these violations of law to proceed without remedy, and

allowing Defendants to continue their wrongful conduct. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendants in the State of California and would lead to repetitious trials of the numerous common questions of fact and law in the State of California.  Class Representative Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

87.    Moreover, the Class members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class.  Absent certification of this action as a class action, Class Representative Plaintiff and the members of the Class will continue to be damaged by the unauthorized release of their individual identifiable medical information.

## VI.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
**(Violations of the Confidentiality of Medical Information Act, Civil Code § 56, *et seq.*)**
(Against All Defendants)

88.    Plaintiff and the Class incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

89.    Defendants are "provider[s] of health care," within the meaning of Civil Code § 56.05(m), and maintained and continues to maintain "medical information," within the meaning of Civil Code § 56.05(j), of "patients" of the Defendants, within the meaning of Civil Code § 56.05(k).

90.    Plaintiff and the Class are "patients" of Defendants within the meaning of Civil Code § 56.05(k).    Furthermore, Plaintiff and the Class, as patients of Defendants, had their individually identifiable "medical information," within the meaning of Civil Code § 56.05(j), stored onto Defendants' server, and received treatment at one the hospital, satellite, or urgent care locations served by Defendants on or before December 28, 2021.

91.    On or about December 28, 2021, Defendants determined that the illegally accessed files involved Plaintiff and Class members' individual identifiable "medical information," within the meaning of Civil Code § 56.05(j),[16] including Plaintiff and the Class members' (1) information to identify and contact you, such as full name, date of birth, address, telephone number, and email address; (2) health insurance information, such as name of insurer, plan and/or group number, and member number; (3) medical information, such as medical record number, dates of service, provider and facility names, and specimen or test information; and (4) billing and claims information.

92.    Defendants were made aware of an unusual activity involving certain of its electronic files.    Defendants immediately commenced an investigation to quickly assess the security of its systems. Through the investigation, Defendants determined that certain files were accessed and acquired between December 21 and 28, 2021 without authorization. During its investigation, Defendants determined that the information of certain individuals were present in the relevant files.

---

[16] Pursuant to Civil Code § 56.05(j), "Medical information" means "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care...regarding a patient's medical history, mental or physical condition, or treatment.  'Individually Identifiable' means that the medical information includes or contains any elements of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity." As alleged herein, Defendants' unencrypted server contained Plaintiff and the Class members' names, dates of birth, and prescription information, and thus contained individually identifiable medical information as defined by Civil Code § 56.05(j)

First Amended Class Action Complaint

93.    As a result of Defendants' above-described conduct, Plaintiff and the Class have suffered damages from the unauthorized release of their individual identifiable "medical information" made unlawful by Civil Code §§ 56.10 and 56.101.

94.    Because Civil Code § 56.101 allows for the remedies and penalties provided under Civil Code § 56.36(b), Plaintiff individually and on behalf of the Class seek nominal damages of one thousand dollars ($1,000) for each violation under Civil Code § 56.36(b)(1); and Plaintiff individually seeks actual damages suffered, if any, pursuant to Civil Code § 56.36(b)(2).

## SECOND CLAIM FOR RELIEF
### (Violations of the CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq.*)

95.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

96.    Defendants are headquartered in California. Defendants violated California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200, *et seq.*, by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in the UCL, including, but not limited to, the following:

   a.  by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard their Personal and Medical Information from unauthorized disclosure, release, data breach, and theft; representing and advertising that they did and would comply with the requirement of relevant federal and state laws pertaining to the privacy and security of the Class' Personal and Medical Information; and omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the Class' Personal and Medical Information;

27

b.  by soliciting and collecting Class members' Personal and Medical Information with knowledge that the information would not be adequately protected; and by storing Plaintiff and Class members' Personal and Medical Information in an unsecure electronic environment;

c.  by failing to disclose the Data Breach in a timely and accurate manner, in violation of Cal. Civ. Code §1798.82;

d.  by violating the privacy and security requirements of HIPAA, 42 U.S.C. §1302d, *et seq.*;

e.  by violating the CMIA, Cal. Civ. Code § 56, *et seq.*; and

f.  by violating the CCRA, Cal. Civ. Code § 1798.82.

97.  These unfair acts and practices were immortal, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class members. Defendants' practice was also contrary to legislatively declared and public policies that seek to protect consumer data and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected by laws like the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1302d, *et seq.*, CMIA, Cal. Civ. Code § 56, *et seq.*, and the CCRA, Cal. Civ. Code § 1798.81.5.

98.  As a direct and proximate result of Defendants' unfair and unlawful practices and acts, Plaintiff and the Class were injured and lost money or property, including but not limited to the overpayments Defendants received to take reasonable and adequate security measures (but did not), the loss of their legally protected interest in the confidentiality and privacy of their Personal and Medical Information, and additional losses described above.

99.  Defendants knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff and Class members' Personal and Medical Information and that the risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair practices and

28

deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Class.

100.   The conduct and practices described above emanated from California where decisions related to Defendants' advertising and data security were made.

101.   Plaintiff seeks relief under the UCL, including restitution to the Class of money or property that the Defendants may have acquired by means of Defendants' deceptive, unlawful, and unfair business practices, declaratory relief, attorney fees, costs and expenses (pursuant to Cal. Code Civ. P. § 1021.5), and injunctive or other equitable relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendants:

a.   An order certifying this action as a class action under Code of Civil Procedure §382, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b.   A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual and statutory damages, including statutory damages under the CMIA, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper.

c.   An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein, including, but not limited to:

i.   Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

29

ii.    Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

iii.    Ordering that Defendants audit, test, and train their security personnel regarding any new or modified procedures;

iv.    Ordering that Defendants' segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised, hackers cannot gain access to other portions of Defendants' systems;

v.    Ordering that Defendants purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

vi.    Ordering that Defendants conduct regular database scanning and securing checks;

vii.    Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

viii.    Ordering Defendants to meaningfully educate its current, former, and prospective employees and subcontractors about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps they must take to protect themselves.;

d.    An order requiring Defendants to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

e.    A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law, including the CCRA, Cal. Civ. Code § 1798.84(g), UCL, Cal. Bus. & Prof. Code § 17082, CMIA, Cal. Civ. Code 56.35; and

30

f.    An award of such other and further relief as this Court may deem just and proper.

**POTTER HANDY LLP**

/s/ James M. Treglio

Dated: June 20, 2022        By:  _____

Mark D. Potter, Esq.
James M. Treglio, Esq.
Attorneys for the Plaintiff and the Class

## **DEMAND FOR JURY TRIAL**

Plaintiff and the Class hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

**POTTER HANDY LLP**

/s/ James M. Treglio

Dated: June 20, 2022        By:  _____

Mark D. Potter, Esq.
James M. Treglio, Esq.
Attorneys for the Plaintiff and the Class

31