UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON TAMRAZ, <br><br> Plaintiff, <br><br> v. <br><br> BAKOTIC PATHOLOGY ASSOCIATES, LLC; BAKO PATHOLOGY HOLDINGS CORPORATION, <br><br> Defendants. | Case No. 22-cv-0725-BAS-WVG <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF No. 10)** |

Before the Court is Defendants' motion brought pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss this putative class action. (Mot., ECF No. 10.) Plaintiff opposes (Opp'n, ECF No. 11), and Defendant replies (Reply, ECF No. 12). The Court finds Defendants' Motion suitable for determination on the papers submitted, without oral argument. Civ. L.R. 7.1(d)(i). Having considered the parties' filings, the Court **GRANTS** Defendants' Motion and **GRANTS** Plaintiff leave to amend.[1]

---

[1] Defendants submitted requests for judicial notice of documents in support of the motion to dismiss. (ECF Nos. 10-2, 12-2.) The Court **GRANTS** Defendants' request for judicial notice as to Exhibit B, a Statement of Information Corporation from the Office of the Secretary of State of California ("Statement of

## I. BACKGROUND[2]

Defendant Bakotic Pathology Associates ("BPA") provides laboratory services to healthcare providers. (First Am. Compl. ("FAC"), ECF No. 9 ¶¶ 13, 27.) BPA is a subsidiary of Defendant Bako Pathology Holding ("BPH"), a parent corporation. (*Id.* ¶ 12; *see* Statement of Incorporation.) Through its services, BPA collects personal information about the patients of its affiliated healthcare providers. (FAC ¶ 32.) The Privacy Statement provided to BPA's patients describes what types of patient information is collected, how it is used, with whom it is shared, and how it is protected. (*Id.*)

Plaintiff Aaron Tamraz was a "patient of [BPA] through one of the healthcare providers served by Defendant." (*Id.* ¶ 10.) He received a notice letter ("Notice") from Defendants dated February 25, 2022, reporting a data breach. (*Id.* ¶ 18.) The Notice stated, "We have determined that an unauthorized third party was able to access certain systems that contained personal information and remove some data between December 21 and 28, 2021." (*Id.* ¶ 19.) The Notice identified the types of information that were illegally accessed as: "(1) information to identify and contact you, such as full name, date of birth, address, telephone number, and email address; (2) health insurance information, such as name of insurer, plan and/or group number, and member number; (3) medical information, such as medical record number, dates of service, provider and facility names, and specimen or test information; and (4) billing and claims information." (*Id.* ¶ 23.)

On March 7, 2022, Plaintiff brought this putative class action in California state court under California's Confidentiality of Medical Information Act ("CMIA") and California's Unfair Competition Law ("UCL"). (Compl., Ex. 2 to Not. of Removal, ECF

---

Incorporation") (ECF Nos. 12-1, 12-2). *Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1232 (W.D. Wash. 2003) ("As certified public records kept by the Secretaries of State of Washington and Delaware, the Articles [of Incorporation] fall directly into the category of items that the Ninth Circuit generally considers proper for judicial notice." (citing *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986))). The Court **DENIES AS MOOT** Defendants' other request for judicial notice (ECF Nos. 10-1, 10-2) because the Court did not rely on the exhibit therein in resolving the pending motion to dismiss.

[2] The facts are all taken from the FAC. For the pending Motion, the Court accepts all of Plaintiff's factual allegations as true. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

No. 1-2; *see* FAC ¶¶ 94, 101.) Defendants removed the case to federal court on May 19, 2022 (Not. of Removal, ECF No. 1.), and Plaintiff filed his FAC on June 21, 2022. Defendants filed the present Motion to Dismiss on July 21, 2022.

## II.   LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). "A Rule 12(b)(6) dismissal may be based on either a 'lack of cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

A complaint must plead sufficient factual allegations to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court, however, need not accept conclusory allegations as true. Rather, it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III.   ANALYSIS

Defendants launch challenges to both the form and substance of the FAC. First, Defendants accuse Plaintiff of shotgun pleading in violation of Rule 8. Second, Defendants argue Plaintiff substantively fails to state a claim under the CMIA and the UCL, respectively.

### A.   Rule 8(a)(2)

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The primary purpose of Rule 8(a)(2) is "to give the defendant

fair notice of the factual basis of the claim[s]" asserted against it. *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 841–42 (9th Cir. 2007). To comply with Rule 8(a)(2), a "plaintiff suing multiple defendants 'must allege the basis of his claims against each defendant[.]'" *Altman v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1067–68 (E.D. Cal. 2012) (quoting *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988); *Steinmetz v. Gen. Elec. Co.*, No. 08-cv-1635-JM-AJB, 2009 WL 10671319, at *2 (S.D. Cal. Feb. 25, 2009) (same). Put differently, a pleading that names multiple defendants must "establish the specific personal involvement" of each defendant "in the alleged wrongful acts." *Isidro Mejia v. NYPD*, 1:16-cv-9706-GHW, 2019 WL 3412151, at *7 (S.D.N.Y. July 28, 2019). Failure to do so "leaves each defendant with no means of determining exactly what each of them is charged with . . . doing," and, therefore, violates Rule 8. *Harris v. Cty. of San Diego*, No. 18-cv-924-BTM-AHG, 2019 WL 6683367, at *6 (S.D. Cal. Dec. 5, 2019) (cleaned up); *see also Watts v. Decision One Mortg. Co., LLC*, No. 09-cv-0043 JM(BLM), 2009 WL 648669, at *2 (S.D. Cal. Mar. 9, 2009) ("Plaintiff simply asserts all defendants are acting in concert and therefore alleges all claims indiscriminately.").

Defendant argues the FAC violates Rule 8(a)(2) because it groups together Defendants as though they are a single defendant. (Mot. at 9.) Plaintiff does not deny that the FAC indiscriminately groups Defendants together. Rather, he argues that Defendants are properly construed as one entity under the "single enterprise rule." (Opp'n at 11.)

Generally speaking, a complaint violates Rule 8(a)(2) when it groups corporate defendants together without specifying which allegations apply to which defendant. *See In re Aluminum Warehousing Antitrust Lit.*, No. 13-md-2481 (KBF), 2015 WL 1344429, at *3 (S.D.N.Y. 2015) ("Neither of the two complaints set forth any specific facts that suggest any participation by any one of these specific entities in the allegedly unlawful conduct. Instead, the claims as to them are based solely on corporate proximity. . . . The fact that two separate legal entities may have corporate affiliation does not alter Rule [8's] pleading requirement. In the absence of allegations that corporate formalities have been ignored, defendants are presumed to be legally separate."). Under California and federal law,

"[c]orporate entities are presumed to have separate existences[.]" *Laird v. Capital Cities/ABC, Inc.*, 80 Cal. Rptr. 2d 454, 460 (Cal. Ct. App. 1998) (citing *Mesler v. Bragg Mgmt. Co.*, 702 P.2d 601, 606 (Cal. 1985)). Thus, factual allegations that group corporate defendants together are improper under Rule 8(a)(2).

There are, however, exceptions to this general rule. When corporations are so closely tied that they functionally merge, courts may pierce the corporate veil. The single enterprise rule and the alter ego doctrine are "equitable doctrine[s] used to disregard the separate existence of corporations when corporations are not operated as separate entities, but rather integrate their resources to achieve a common business purpose." 18 C.J.S. Corporations § 29; *accord Greenspan v. LADT, LLC*, 121 Cal. Rptr. 3d 118, 138 (Cal. Ct. App. 2010). Generally, the alter ego doctrine applies to parent-subsidiary corporations, and the single enterprise rule applies to sister corporations. *See Oncology Therapeutics Network Connection v. Va. Hematology Oncology PLLC*, No. C 05-3033 WDB, 2006 WL 334532, at *18 (N.D. Cal. Feb. 10, 2006). Thus, although Plaintiff argues the single enterprise rule applies (Opp'n at 11), the alter ego doctrine would seem to better suit the facts of this case. Regardless, the test for alter ego and single enterprise is the same. *See In re GGW Brands, LLC*, 504 B.R. at 622 (single enterprise rule); *Price v. Synapse Grp., Inc.*, No. 16-CV-01524-BAS-BLM, 2017 WL 3131700, at *12 (S.D. Cal. July 24, 2017) (alter ego doctrine). As such, the Court finds caselaw on both the alter ego doctrine and the single enterprise rule instructive.

Parties seeking a single enterprise or alter ego determination must establish two elements: (1) "such a unity of interest and ownership that the separate corporate personalities are merged, so that one corporation is a mere adjunct of another or the two companies form a single enterprise" (unity) and (2) "an inequitable result if the acts in question are treated as those of one corporation alone" (inequity). *In re GGW Brands, LLC*, 504 B.R. 577, 622 (Bankr. C.D. Cal. 2013) (quoting *Tran v. Farmers Group, Inc.*, 128 Cal. Rptr. 2d 728, 740 (Cal. Ct. App. 2022); *accord Gopal v. Kaiser Found. Health Plan, Inc.*, 203 Cal. Rptr. 3d 549, 554 (Cal. Ct. App. 2016), *modified* (June 23, 2016).

Here, the FAC flunks this veil piercing test. To begin, the FAC makes several conclusory statements regarding the connection between Defendants. For instance, it states, "Defendants, and each of them, were an agent or joint venturer of each of the other Defendants, and in doing the acts alleged herein, were acting with the course and scope of such agency[.]" (FAC ¶ 15.) The Court disregards these allegations. *See Holden*, 978 F.2d at 1121; *see Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015) ("Conclusory allegations of alter ego status are insufficient."). Aside from conclusory allegations, Plaintiff argues two facts support his invocation of the single enterprise rule: (1) Defendants share the same principal place of business address (FAC ¶¶ 12–13) and (2) BPH is the parent corporation of BPA (*see* Statement of Incorporation).[3] But these alone are not enough to establish unity or inequity.

    First, a parent-subsidiary relationship does not establish unity between the two corporations, even when they share a principal place of business. *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134–35 (9th Cir. 2003) (holding that parent company wholly owned subsidiary, parent and subsidiary shared the same officers and directors, co-employed staff, and shared physical office space did not demonstrate alter ego). In other cases, plaintiffs have asserted facts such as comingling of funds, use of the subsidiary as a shell for the parent, failure to maintain adequate corporate records, or failure to capitalize the subsidiary. *See Price*, 2017 WL 3131700, at *13 (collecting cases and listing factors for an alter ego determination). These sorts of facts, which this Court's sister tribunals have found adequate to trigger a finding of unity, are wholly absent from the FAC. Therefore, Plaintiff has not alleged BPA is a "mere adjunct" of BPH or "the two companies form a single enterprise." *In re GGW Brands, LLC*, 504 B.R. at 622.

---

[3] The Court notes that this second fact is not alleged in the FAC as required by Rule 8. But even if it were, the FAC would still not sustain a single enterprise or alter ego determination for the reasons discussed in this Section.

Second, the FAC is devoid of any allegations related to inequity. Indeed, nothing in the FAC enables this Court to infer treating Defendants as separate corporate entities will lead to unjust results. And so, Plaintiff also has not carried his burden to establish inequity.

In sum, Plaintiff fails to justify piercing the corporate veil. As a result, the FAC violates Rule 8 by indiscriminately grouping Defendants together without reason. This deficiency alone sinks Plaintiff's pleading.

### B. Failure to State a Claim

Although dismissal is warranted on Rule 8(a)(2) grounds, for the purpose of efficiency and completeness, the Court assesses whether Plaintiff has otherwise stated claims under either the CMIA or UCL to satisfy Rule 12(b)(6) plausibility requirements.

#### 1. CMIA

The CMIA "provides that an individual may recover $1,000 nominal damages against any person or entity who has negligently released his confidential medical information." *Eisenhower Med. Ctr. v. Sup. Ct.*, 172 Cal. Rptr. 3d 165, 168 (Cal. Ct. App. 2014). Defendants argue Plaintiff fails to state a claim because no "medical information" as defined by the statute was disclosed. (Mot. at 10.) "Under the CMIA a prohibited release . . . must include more than individually identifiable information but must also include information relating to medical history, mental or physical condition, or treatment of the individual." *Eisenhower Med. Ctr.*, 172 Cal. Rptr. 3d at 170. Thus, the information must be "substantive," rather than merely administrative. *Id.* at 434.

Information that merely indicates appointment information is not "medical information" under the CMIA. *See Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1078 (S.D. Cal. 2017). In *Wilson v. Rater8, LLC*, the Honorable Judge Dana M. Sabraw distinguished between "information about [an] appointment" and "information regarding treatment." No. 20-CV-1515-DMS-LL, 2021 WL 4865930, *5 (S.D. Cal. Oct. 18, 2021). The disclosed information included the plaintiff's name, telephone number, treating physician's name, scheduling information, and discharge dates and times. *Id.* But the court found this information did not amount to "medical information" under the CMIA. *Id.*

Here, the FAC alleges Defendants disclosed "(1) information to identify and contact you, such as full name, date of birth, address, telephone number, and email address; (2) health insurance information, such as name of insurer, plan and/or group number; (3) medical information, such as medical record number, dates of service, provider and facility names, and specimen or test information; and (4) billing and claims information." (Compl. at ¶ 20.) As Plaintiff points out in his Opposition, disclosure of the "specimen or test information" in this instant case distinguishes it from the precedents cited in Defendants' briefing.[4] Unlike mere appointment information or provider names, this substantive information reveals "a patient's medical history, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(i) (defining "medical information"). Drawing reasonable inferences in favor of the non-moving party, the Court finds that "specimen or test information" is "medical information" under the CMIA. Therefore, Plaintiff adequately alleges the data breach included "medical information" under the CMIA.

**2.   UCL**

In addition to statutory damages under the CMIA, Plaintiff requests equitable restitution and injunctive relief under the UCL. Defendants launch a two-prong attack on Plaintiff's UCL claim. First, Defendants argue Plaintiff lacks statutory standing under the UCL. Second, Defendants argue Plaintiff fails to allege there exists inadequate remedy at law to warrant equitable relief. The Court finds Plaintiff fails to allege statutory standing under the UCL, and as a result, does not reach the adequate legal remedies issue.

The standing requirements under the UCL are the same for equitable restitution and injunctive relief. *See Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1087–88 (Cal. 2010) ("If a party has standing under [California Business & Professions Code §] 17204 . . . , it may seek injunctive relief under section 17203."). A UCL claim may only be brought by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. As a result, a plaintiff must

---

[4] The Court infers that the results of test and the types of specimens are included in the "specimen or test information."

"demonstrate some form of economic injury." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011). To establish standing under the UCL, a plaintiff may "(1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id.*

In his Opposition, Plaintiff offers two theories of standing: lost personal health information and lost benefit of the bargain. (Opp'n at 18–19.) Neither is persuasive.

First, Plaintiff argues losing a "legally protected interest"—his personal health information—confers him standing under the UCL. But courts have consistently found otherwise. *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) (holding that "to merely say the information was taken and therefore it has lost value" does not confer UCL standing); *Ji v. Naver Corp.*, No. 21-CV-05143-HSG, 2022 WL 4624898, at *9 (N.D. Cal. Sept. 30, 2022) ("Courts in this District have held that to proceed on an economic injury theory, data privacy plaintiffs must allege the existence of a market for their data and the impairment of the ability to participate in that market."). The relevant inquiry is not whether Defendants can profit from Plaintiff's personal information, but whether Plaintiff himself can profit from his own data. The FAC does not allege any opportunity through which Plaintiff might do so. *See Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 n.4 (N.D. Cal. 2021) (noting that the plaintiff's "location data may have economic value to others but not to him" which "reflects a peculiar feature of the current information economy"). Indeed, Plaintiff does not cite any authority that finds standing under UCL based solely on the loss of personal information. Thus, Plaintiff's first theory fails to establish statutory standing under California's UCL.

Second, Plaintiff posits losing the "benefit of the bargain" confers standing under UCL. Although the law sustains this second theory of standing in the abstract, Plaintiff fails to establish a crucial fact—that he actually bargained with Defendants. "Courts in California have consistently held that benefit of the bargain damages represents economic

injury for purposes of the UCL." *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-CV-2284-H-KSC, 2020 WL 2214152, at *9 (S.D. Cal. May 7, 2020). When a plaintiff alleges a level of data security is integral to the bargained for exchange, failure to ensure that level of security may confer standing under the UCL. *See In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 971 (N.D. Cal. 2021). But by contrast, when a plaintiff never bargained with a defendant, there can be no benefit of the bargain standing under the UCL. *See id.* (finding that plaintiffs who did not directly transact with the defendant Google, but rather interacted with non-Google smartphones, did not have benefit of the bargain standing under California's UCL). If a plaintiff "fail[s] to allege that [he] paid any money" to defendants, then he "cannot have been injured by overpayment." *Id.*

Here, Plaintiff fails to allege that he bargained with Defendants. Indeed, the FAC alleges that his payments were made to "healthcare providers served by Defendants." (FAC ¶ 10.) Plaintiff cannot establish data security was part of a bargained for exchange between the parties, because he does not establish there was a bargained for exchange between them. Instead, the FAC alleges Plaintiff provided personal health information to his healthcare provider, which, in turn, provided it to Defendants. (*Id.*) Thus, Plaintiff fails to establish standing under his second theory as well.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion to Dismiss (ECF No. 10) and dismisses the action without prejudice. Furthermore, the Court **GRANTS** Plaintiff leave to amend. If Plaintiff wishes to file an Amended Complaint, he must do so no later than **December 6, 2022**.

**IT IS SO ORDERED.**

**DATED: November 16, 2022**

Hon. Cynthia Bashant
United States District Judge